## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

CARLINVILLE SOUTHERN BAPTIST
CHURCH, an Illinois Religious
Corporation,

      Plaintiff,

v.

                                   Hon. Jeanne E. Scott
                                   Magistrate Judge Charles H. Evans
                                   Case No. 3:08-cv-3074

CITY OF CARLINVILLE, ILLINOIS, a
municipal corporation,  and the CITY OF
CARLINVILLE PLANNING/ZONING
COMMISSION, a municipal body,

      Defendant.

---

**Tomkiw Dalton, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff, *lead counsel*
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 (Fax)
ddalton@tomkiwdalton.com

**O'Halloran Kosoff Geitner & Cook, LLC**
Elisha S. Rosenblum
Attorney for Defendant
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile: (847) 291-9230
esrosenblum@okgc.com

**Giffin, Winning, Cohen & Bodewes, P.C.**
David A. Herman (6211060)
David O. Edwards (6229192)
Co-Counsel for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

---

### *Plaintiffs' Response to Defendants Request to Further Delay the Case and Ignore the Court's Order in the Filing of a Response to Plaintiff's Partial Motion for Summary Judgment*

Plaintiff, Carlinville Southern Baptist Church, by and through its attorneys, *Tomkiw*

*Dalton, plc,* files this response to Defendants Motion to Delay this case for the reasons set forth

below and in the attached Memorandum of Law.   In opposition to his Motion, Plaintiff Carlinville Southern Baptist Church states as follows:

1.      On March 18, 2008, Plaintiff Carlinville Southern Baptist Church (hereinafter referred to as "Carlinville Baptist Church") filed a verified complaint based upon the City's denial of rezoning to allow religious use because of the loss of a tax basis, alleging violations Of the federal and state constitution, the Religious Land Use and Institutionalized Persons Act, the Illinois Religious freedom Restoration Act and have sought mandamus and superintending control over the out of control City Counsel.

2.      On March 19, 2008, Carlinville Southern Baptist Church filed a Motion for ex Parte Temporary Injunction or in the alternative, a Preliminary Injunction seeking equitable relief under the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 USC 2000cc.

3.      On March 20, 2008, Carlinville Southern Baptist Church attempted to serve the Mayor of Carlinville with the complaint and motion.  The Mayor, however, tried to evade service throughout the day by driving away from the process server on several occasions. The City Attorney finally agreed to accept service.

4.      On March 21, 2008 this Court scheduled argument on Carlinville Southern Baptist Church's motion for injunctive relief. Accepting the fact that the actions of the City violated RLUIPA, the federal and state constitutions and the Illinois RFRA, the City *stipulated* to an injunctive Order allowing it occupy, renovate and use the building for all its intended purposes, excluding the one main use - holding worship services.

5.      The Court has not scheduled argument on the remaining issue set forth in the Motion for Preliminary Injunction – that is, whether the Defendants denial of the rezoning based

on loss of tax revenue resulting in the inability of the Church to worship in its building violated the First Amendment and the substantial burden and equal terms prongs of RLUIPA.

6.    On April 18, 2008 the Church filed its partial Motion for Summary Judgment as to liability on Counts IV and V of the complaint - the RLUIPA substantial burden, equal terms, unreasonable limitations and exclusions portion of the complaint. The sole issue within the pending motion is whether the City's denial of the rezoning based solely on loss of tax revenue, resulting in the Churches inability to worship in its building, violates RLUIPA.

7.    On April 19, 2008, the City insurance defense counsel urged the Church to mediate the remaining issues of (a) using the building for worship, (b) money damages, and (c) attorney fee's.

8.    On May 16 and May 28, 2008 the parties participated in day long mediations resulting in a settlement approved by the Mayor, a council member, its attorney, its insurance defense attorney and its insurance carrier.  The settlement was contingent upon City Council approval.

9.    On June 5, 2008 the City Council approved the settlement.  Thereafter and unbeknownst to anyone negotiating the settlement, the Mayor, *the same person who tried to avoid service of process, asked for mediation, participated in mediation and approved the settlement at mediation* vetoed the settlement.

10.    At the June 16, 2008 City Council meeting, a motion was made to override the veto. The vote failed due to lack of support. Thereafter, a City Council member who was part of the negotiation team for the City resigned from the City Council citing the "bad faith" of the Mayor. *Exhibit 1*

11.    Immediately, thereafter, the Court ordered the City to file a response to the Church's Motion for Summary Judgment, which has been pending for nearly two months without a response, on or before June 19, 2008.

12.    The Defendants failed to file a response to Summary Judgment.

13.    Likewise, the Defendants failed to answer the complaint and motion for preliminary injunction that has been pending since March 18, 2008.

14.    Rather, the City has asked for a 215 day postponement to file a response to summary judgment pursuant to Fed. R. Civ. Pro. 56 (f).

15.    Carlinville Southern Baptist Church respectfully request that this Court deny Defendants Motion as no discovery is needed on the issues presented to the Court. *The only issue before the Court in the pending partial summary judgment motion is whether the City's decision to deny rezoning based upon the Church's tax exempt status violates RLUIPA.* The facts are settled and the law is clear.  The exhibits to the complaint affirm that the Mayor has repeatedly made it clear that the sole reason the City denied the rezoning was the loss of tax basis. No discovery is needed on this point.  See ,Plaintiff's complaint, ***Docket No. 1, Exhibits 5, 10, and 11.***

16.    The arguments set forth in the papers submitted by the City, as well as its affidavits, fail to address the central issue set forth in the pending Motion for Summary Judgment.  Rather, they attempt to shift the focus of the issue to the conduct of the Church and its senior pastor away from the conduct of the City..

17.    The law does not support the position asserted by the City. RLUIPA violations focus on the conduct of the City – not on the Church As explained by the Court in *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, (7th

4

Cir. 2005) (Posner, J.), the focus of a RLUIPA substantial burden inquiry is on the government's treatment of the religious applicant than on any resulting coercion or on the availability of alternatives. *Constantine,* 396 F.3d at 901.

18.    For the reasons set forth herein, and those reasons set forth in the attached Memorandum in Support, Carlinville Southern Baptist Church respectfully request this Court to deny Defendants motion and sanction them for the bad faith actions taken by the mayor herein. Alternatively, the Church respectfully request this Court to fast track discovery and schedule trial within the 60 days on the remaining issues in this case.

Respectfully submitted,

**TOMKIW DALTON, plc**

By:/s/ Daniel P. Dalton
Daniel P. Dalton (P 44056)
Attorney for Plaintiff
*Lead Counsel*
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 facsimile
ddalton@tomkiwdalton.com

## PROOF OF SERVICE

I, the undersigned, hereby certify that on June 24, 2008, I filed this Motion and Brief in Opposition of Defendants Rule 56 (f) Motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendants: Elisha S Rosenblum, Clifford G Kosoff, and Jane M May of the law firm, O'Halloran, Kosoff, Geitner & Cook, P.C. 650 Dundee Road Northbrook, IL 60062

By:  /s/Daniel P. Dalton
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI 48067
Tel:  (248) 591-7000

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(B)(4) the undersigned counsel hereby certifies that this Motion and accompany Brief complies with the type-volume limitation found at Local Rule 7.1(B)(4)(b).  The combined word count is 6681 words. The pleadings have been prepared in Microsoft Word 2003, using a proportionally spaced font, Times New Roman, and a 12-point font size.

Respectfully Submitted,
**TOMKIW DALTON, plc**

/s/ Daniel P. Dalton
Daniel P. Dalton (P 44056)
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

CARLINVILLE SOUTHERN BAPTIST
CHURCH, an Illinois Religious
Corporation,

      Plaintiff,

v.

                                      Hon. Jeanne E. Scott
                                      Magistrate Judge Charles H. Evans
                                      Case No. 3:08-cv-3074

CITY OF CARLINVILLE, ILLINOIS, a
municipal corporation, and the CITY OF
CARLINVILLE PLANNING/ZONING
COMMISSION, a municipal body,

      Defendant.

---

**Tomkiw Dalton, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff, *lead counsel*
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 (Fax)
ddalton@tomkiwdalton.com

**O'Halloran Kosoff Geitner & Cook, LLC**
Elisha S. Rosenblum
Attorney for Defendant
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile: (847) 291-9230
esrosenblum@okgc.com

**Giffin, Winning, Cohen & Bodewes, P.C.**
David A. Herman (6211060)
David O. Edwards (6229192)
Co-Counsel for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

---

*Brief in Support*
*of Plaintiffs' Response to Defendants Request to further delay the case and*
*ignore the Court's Order in the filing of a Response to*
*Plaintiff's partial Motion for Summary Judgment*

## <u>TABLE OF CONTENTS</u>

Index of Authorities ........................................................................................................ iii

Controlling Authority..................................................................................................... iv

Concise Statement of the Issues Presented ................................................................. iv

I.　　Introduction .......................................................................................................1

II.　　Standard of Review ............................................................................................3

III.　　Statement of Facts............................................................................................3

IV.　　Legal Arguments................................................................................................4

V.　　Conclusion ........................................................................................................14

# INDEX OF AUTHORITIES

## Cases

*AM Gen. Corp. v. Daimler-Chrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) .......................... 4

*Anshe Chesed Congregation v. Bruggemeier*, 115 N.E.2d 65, 69 (Ohio App. 1953) .................... 4

*Association of Community Organizations for Reform Now v. City of Dearborn*, 696 F. Supp.
    268, 271 (E.D. Mich. 1988) ........................................................................................ 8

*Beattie v. Madison County School Dist.*, 254 F 3rd 595, 606 (5th Cir., 2001) ................................. 3

*Church of Jesus Christ of Latter-Day Saints v. Jefferson County*, 741 F. Supp. 1522, 1526 n.7
    (N.D. Ala. 1990) ...................................................................................................... 4

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003) .................. 8

*Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp 2d 1203 (C.D.
    Cal. 2002) .......................................................................................................... v, 7, 8

*Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 618 (7th Cir. 2007) ............... 7

*Diocese of Rochester v. Planning Bd.*, 136 N.E.2d 827, 836 (N.Y. 1956) .................................... 4

*Doe v. Abington Friends School*, 480 F.3d 252, 255 n.3 (3rd Cir., 2007)...................................... 3

*Elrod v. Burns*, 427 U.S. 347, 373 .................................................................................... 7, 13

*Elsinore Christian Center v. City of Lake Elsinore.* 291 F. Supp. 2d 1083 (C.D. Cal. 2003, *rev'd
    on other grounds*, 197 Fed. Appx. 718 (9th Cir. 2006) .......................................... 5

*Englewood v. Apostolic Christian Church*, 362 P.2d 172, 177 (Colo. 1961) ................................. 4

*Exigent Tech. Inc. v. Altrana Solutions, Inc.*, 442 F 3rd 1301,1310 (Fed. Cir. 2006) ..................... 3

*Greentree at Murray Hill Condo. v. Good Shepherd Episcopal Church*, 550 N.Y.S.2d 981, 989
    (N.Y. Sup. Ct. 1989) .................................................................................................. 4

*Guru Nanak Sikh Society of Yuba City* v. *County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006). 10,
    11

*Henderson* v. *Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) ............................................................. 12

*Jacobi v. Zoning Bd. of Adjustment*, 196 A.2d 742, 745 (Pa. 1964)................................................ 4

*New York Times Co. v. United States*, 403 U.S. 713 (1971)....................................................... 7, 13

*Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).............................................................. 7, 13

*Petra Presbyterian v. Village of Northbrook*, 489 F 3rd 846, 851 (7th Cir., 2007)................... 8, 13

*San Jose Christian v. City of Morgan Hills*, 360 F.3d 1024, 1034 (9th Cir. 2004)........... 10, 11, 12

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895
    (7th Cir. 2005)..................................................................................................... v, 8

*Vietnamese Buddhism Study Temple in America vs. City of Garden Grove*, 460 F. Supp 2d 1165
    (C.D. Cal. 2006)................................................................................................. v, 4

*Vinewood Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961 (N.D.
    Ill. 2003).......................................................................................................... v

## Statutes

42 USC 2000cc ......................................................................................................... v

Fed. R. Civ. Pro. 56 (f).................................................................................................. v

*Harbert Int'l, Inc. v James.*, 157 F 3rd 1271, 1280 (11th Cir., 1998)............................................ 3, 13

## Other Authorities

Hatch-Kennedy Statement, 146 Cong. Rec. S. 7774, at *7775 ...................................................... 5

Report of the House Committee on the Judiciary (House Rep. 106-219) (July 1, 1999)............... 6

## CONTROLLING AUTHORITY

Plaintiff relies upon Fed. R. Civ. Pro. 56 (f) and the Religious Land Use and Institutionalized Persons Act, 42 USC 2000cc, ("RLUIPA"), *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) (Posner, J.) *Vinewood Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961 (N.D. Ill. 2003) *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp 2d 1203 (C.D. Cal. 2002) and *Vietnamese Buddhism Study Temple in America vs. City of Garden Grove*, 460 F. Supp 2d 1165 (C.D. Cal. 2006)

## CONCISE STATEMENT OF THE ISSUES PRESENTED

Should this Honorable Court deny Defendants' motion to further delay this case, continue to violate the constitutional rights of the Church and backlog this Court's docket in failing to answer a partial Motion for Summary Judgment when the only issue before the Court is a legal issue; that is, whether the City of Carlinville's decision to deny rezoning of property based solely on the loss of taxable revenue violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc (" RLUIPA")? *Plaintiff answers: Yes*

iv

## INTRODUCTION

Plaintiff, Carlinville Southern Baptist Church, is a Christian Church that purchased a 10,000 square foot building, originally used as a Wal-Mart retail center in the City of Carlinville, Illinois. The property is zoned C-1, a commercial district. The Church applied to rezone the property to the R designation to allow a religious use as of right. At the time of the application, the City allowed a similar assembly use, an "Auditorium," as of right in the C-1 zone as well as other secular uses that are consistent with a church use – funeral homes, day care, offices etc. The Carlinville Planning/Zoning Commission recommended denial of the rezoning to the City Council. The Church notified the City that if the City Council denied the rezoning, it would violate RLUIPA. Nonetheless, the City Council amended its Zoning Ordinance to make an "Auditorium" use in the C-1 zoning district a special approval land use, then affirmed the Planning Commission's denial of rezoning. Subsequent to the denial of the rezoning, the City publicly announced on television, in a newspaper article and at a Chamber of Commerce event that the sole reason for denying the rezoning was that the City would lose tax revenue if the property was used for any religious purpose.

Thereafter, the City publicly announced that it would seek injunctive relief to preclude the Church from using its property for any religious use, regardless of whether the use was available in the C-1 district or not. Carlinville Southern Baptist Church filed the suit and moved for a Temporary Restraining Order to preclude the City of Carlinville from interfering with the lawful uses of the building under the C-1 district and requested that this Court grant it injunctive relief to allow it to use the building for all of its intended religious uses. On the day of the hearing, the City stipulated to an Order, allowing it to enter, renovate and use its building for all of its intended purposes. The sole exception is the ability to worship in the building.

The Church then submitted a partial summary judgment motion addressing the final equitable claim – use of the property for "worship." Thereafter, the City aggressively petitioned the Church to mediate the remaining issues of using the building for worship, payment of money damages, and payment of attorney fee's. On May 16 and May 28, 2008 the parties attended day long mediations resulting in a settlement approved by the Mayor, a council member, its attorney, its insurance defense attorney and its insurance carrier. The settlement was conditioned on City Council approval. On June 5, 2008 the City Council approved the settlement. Immediately thereafter, the Mayor vetoed the settlement. The City Council then met on June 16, 2008, attempted to override the veto but failed to do so. Thereafter, the city council member who was part of the negotiation team for the City resigned from the council citing the "bad faith" of the Mayor in agreeing to settle then reneging on his agreement. **_Exhibit 1_**   By denying the rezoning based on the loss of tax revenue, which is at the ONLY reason of its decision, threatening litigation and demanding that the Church sell the property to it, the City has otherwise made unavailable to the Church its right to use its property for religious purposes in violation of RLUIPA.

At the present time, the motions pending before the Court include a decision on the preliminary injunction addressing the injunctive issues with respect to worship in the building, a partial motion for summary judgment based on the Defendants RLUIPA violations, and Defendants Rule 56 (f) motion to delay the case 215 days. The Church will be filling a variety of motions in the near future.

As of this writing, the Defendants have failed to answer the complaint, the preliminary injunction, and partial motion for summary judgment. They have offered no rationale for their unconstitutional decision making, and cannot tell the Court the good faith basis for pursing then reneging on a settlement agreement. The have, however, engaged in textbook bad faith conduct.

2

Plaintiff Carlinville Southern Baptist Church respectfully request this honorable Court to grant its Motion for Preliminary Injunction, its Motion for Partial Summary Judgment and sanction Defendants for their conduct both pre and post litigation, and enter an Order denying the Defendants Rule 56 (f) motion.

## STANDARD OF REVIEW

To prevail on a Rule (f) postponement motion, the burden is on the movant to show how discovery would preclude the entry of summary judgment. *Doe v. Abington Friends School,* 480 F.3rd 252, 255 n.3 (3rd Cir., 2007); *Exigent Tech. Inc. v. Altrana Solutions, Inc.,* 442 F 3rd 1301,1310 (Fed. Cir. 2006)  The decision to grant or deny a Rule 56(f) motion postponement is committed to the Court's discretion. *Beattie v. Madison County School Dist.,* 254 F 3rd 595, 606 (5th Cir., 2001). In ruling the district court must balance the burden discovery and delay will place on the opposition party. *Harbert Int'l, Inc. v James.,* 157 F 3rd 1271, 1280 (11th Cir., 1998).

## STATEMENT OF FACTS

Carlinville Southern Baptist Church incorporates by reference the verified complaint with the attached exhibits as set forth in **Docket No. 1.** For purposes of this brief, there are a few relevant facts the Church wishes to point out.

- The City has publicly stated that on three separate occasions that the sole reason for denying the rezoning is the loss of a tax basis with a religious use on the property.

- Prior to the City denying rezoning, the Zoning Ordinance permitted as of right an auditorium use in the C-1 district. The auditorium use is defined in the City zoning ordinance as a use identical to a Church assembly use. The City *amended* its Zoning Ordinance and deleted "Auditoriums" as a permitted use in the C-1 district. The City now allows auditoriums, non commercial clubs and lodges as a special use in the C-1 zoning district. The City also amended the "special approved" use schedule and Churches are now a permitted use as of right in the R district, and a permitted special use in the A (agricultural) district. The amendment, however, is for naught as there is no available land within the City of Carlinville zoned "R" or "A" that is reasonably suitable for Carlinville Southern Baptist Church to build or use for religious purposes.

3

- After denying the rezoning request, and to this day, the City of Carlinville, through its Mayor, demanded the Church to sell its property to him and the Church has refused to sell.

## LEGAL ARGUMENTS

### *No Discovery is needed on the questions presented before the Court on Plaintiff's Motion for a Preliminary Injunction and Partial Motion for Summary Judgment.*

The question before the Court on the Preliminary Injunction and the Partial Motion for Summary Judgment is whether the decision to deny rezoning based solely on the alleged loss of tax basis violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA" or "the Act"), and the First Amendment.[1] There is no discovery that will change the fact that the City used the Church's tax-exempt status as a method of placing it on less than equal terms with nonreligious assemblies. No less than three times has the City made it perfectly clear that the reason they denied the rezoning was a loss of tax basis. *See Plaintiff's Complaint, Docket No. 1, Exhibits 5, 11 and 12.*

And the law is clear – the City's claimed interest in preserving property values cannot be used to justify a complete exclusion of a religious institution from the City's jurisdiction. *Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1174-75.[2] This same issue was

---

[1] In order to obtain injunctive relief, the Church need not demonstrate a high likelihood of success on the merits; rather, it must demonstrate only a "negligible" change of success. *AM Gen. Corp. v. Daimler-Chrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Seventh Circuit employs a "sliding scale" approach in deciding whether to grant or deny injunctive relief. *Id.* Thus, even a plaintiff with a less than fifty percent change of prevailing may merit an injunction when the balance of harms would weigh heavily in plaintiff's favor. Here, the Church has not just a negligible chance of success, but a strong likelihood of prevailing on its claims against Defendants.

[2] *See e.g. Church of Jesus Christ of Latter-Day Saints v. Jefferson County*, 741 F. Supp. 1522, 1526 n.7 (N.D. Ala. 1990); *Greentree at Murray Hill Condo. v. Good Shepherd Episcopal Church*, 550 N.Y.S.2d 981, 989 (N.Y. Sup. Ct. 1989) (holding that speculative fears of diminution of property values do not qualify as injury, let alone irreparable harm); *Englewood v. Apostolic Christian Church*, 362 P.2d 172, 177 (Colo. 1961) (McWilliams, J., concurring) ("The possible depressive effect on property values by the erection of a church in a residential zone is not in itself sufficient ground for denying a permit for construction of a church.") *Diocese of Rochester v. Planning Bd.*, 136 N.E.2d 827, 836 (N.Y. 1956) ("[I]t cannot seriously be argued that the decision of respondents denying this permit because of a loss of tax revenue is in furtherance of the general welfare."); *Anshe Chesed Congregation v. Bruggemeier*, 115 N.E.2d 65, 69 (Ohio App. 1953) ("No municipal corporation can justly refuse a permit to build a church only because the property will no longer be subject to taxation."); *Jacobi v. Zoning Bd. of Adjustment*, 196 A.2d 742, 745 (Pa. 1964) ("So universal is the belief that religious . . . institutions should be exempt from taxation

4

discussed in *Elsinore Christian Center v. City of Lake Elsinore.* 291 F. Supp. 2d 1083 (C.D. Cal. 2003 (holding City's denial of church's application for a CUP violated RLUIPA, but RLUIPA exceeds Congress' power), *rev'd on other grounds,* 197 Fed. Appx. 718 (9th Cir. 2006) (holding RLUIPA is not unconstitutional). In *Elsinore,* the City denied a church's conditional use permit. The Court found that "the maintenance of property tax revenue is a potentially pretextual basis for decision-making that appears to have been a specific target of RLUIPA."[3] The court went on to hold:

> The Act's drafters were concerned that where, as here, a church is required to seek a permit, "[t]he zoning board [does] not have to give a specific reason [for denying the permit]. They can say it is not in the general welfare, or they can say you are taking property off the tax rolls." Indeed, if a city's interest in maintaining property tax levels constituted a compelling governmental interest, the most significant provision of RLUIPA would be largely moot, as a decision to deny a religious assembly use of land would almost always be justifiable on that basis. (citations omitted)

*Elsinore,* 291 F. Supp. 2d at 1093

Similarly, in *Vietnamese Buddhism Study Temple,* the primary concerns raised in the City Planning Commission's denial of the Temple's applications were increased traffic, increased on-street parking, and loss of revenue. The court found that "[t]hese three concerns simply do not justify facially unequal treatment between a church and a private club." *Id.* at 1174. The court reasoned:

> [I]f a tax exempt non-profit private organization decides to purchase property in the office professional zone, the City would suffer the same loss of revenue as it would if a religious association operated the property as a church. The City has not shown that a church or religious assembly would have a demonstrably different impact on the office professional zone than would a private club or lodge. This strongly suggests that the zoning ordinance impermissibly pursues Garden Grove's interests only against conduct motivated by religious belief.

---

that it would be odd indeed if we were to disapprove an action of the zoning authorities consistent with such belief and label it adverse to the general welfare.").

[3] 291 F. Supp. 2d at 1093 (citing Report of the House Committee on the Judiciary (House Rep. 106-219) (July 1, 1999) at text accompanying n. 79 (cited in Hatch-Kennedy Statement, 146 Cong. Rec. S. 7774, at *7775)

*Id.* at 1175. The court preliminarily enjoined the city from enforcing those provisions of the zoning ordinance against the Temple. *Id.*

### It is undisputed that the City violated the Equal terms provision of RLUIPA

In the instant case, the City's violation of the equal terms provision is further evidence by the substantial similarity between the Church's religious use and certain special uses in the C-1 district. The zoning ordinance excludes religious uses from that district, while auditoriums and non commercial clubs and lodges are all permitted as a special approval land use. In considering the RLUIPA bill, the House of Representatives considered this precise issue and concluded that RLUIPA was needed because:

> Significantly, non-religious assemblies [have not been required to] follow the same rules . . . [U]ses such as *banquet halls, clubs,* community centers, *funeral parlors,* fraternal organizations, *health clubs, gyms, places of amusement, recreation centers, lodges, libraries, museums,* municipal buildings, *meeting halls,* and *theaters* are often permitted as of right in zones where churches require a special use permit, or permitted on special use permit where churches are wholly excluded.

Report of the House Committee on the Judiciary (House Rep. 106-219) (July 1, 1999).

### The City violated the substantial burden prong of RLUIPA

In *Sts. Constantine, supra,* a substantial burden case very similar to the instant claim, the Greek Orthodox Church acquired a 40-acre tract in a section of New Berlin zoned residential, planning on building a church that would replace its existing church in the nearby city that it was outgrowing due to its growing congregation. Finding that the actions of the City, in denying a request to rezone the property, amounted to a violation of the substantial burden portion of RLUIPA, the Court held:

> If a land-use decision, in this case the denial of a zoning variance, imposes a substantial burden on religious exercise (the statute defines "religious exercise" to include the "use, building, or conversion of real property for the purpose of religious exercise," 42 U.S.C. § 2000cc-5(7)(B), the decision maker cannot justify it, the inference arises that hostility to religion, or more likely to a particular sect,

6

influenced the decision. The burden here was substantial. *Sts. Constantine*, 396 F.3d at 900-01.

Application of the *Sts. Constantine* decision compels a finding that the City of Carlinville violated the substantial burden prong of RLUIPA through its denial of rezoning. The City's admitted reasons for its decision was the loss of real property and sales tax if the property was rezoned from commercial to religious. There is no greater burden than not allowing the Church to use its building for worship simply because it does not generate tax revenue for the City. *See Cottonwood Christian Center*, 218 F. Supp. 2d at 1228 (concluding that city's denial of property owner's conditional use permit application for construction of a church violated RLUIPA as revenue could be generated without preventing tax-free religious land uses.) The present inability to use the property as a religious use is clearly a "substantial burden" on the free exercise of religion as the Church cannot use its property for any religious reason.[4]

### The City violated the First Amendment Rights of the Church

Future every day the Church is forced to deny religious services to its congregation is a day that the congregation is denied the First Amendment rights of freedom of speech, freedom of association, and free exercise of religion. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod* for the conclusion that "the Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.");

---

[4] Aside from the pretextual reasons it has relied on to deny the use, the City cannot articulate a legitimate reason to support the position that congregants worshipping on the property will negatively impact the neighborhood. *See Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 618 (7th Cir. 2007) (entitling a church to preliminary injunctive relief when the city violated the equal terms provision of RLUIPA).

*Association of Community Organizations for Reform Now v. City of Dearborn*, 696 F. Supp. 268, 271 (E.D. Mich. 1988) (same).

Simply put, Carlinville Southern Baptist Church and its congregation has been completely denied their right to practice their faith in the manner of their choosing. Denying a congregation the ability to meet together for religious services on its own property constitutes "clear irreparable injury." *Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1172. The injury caused by the City is "especially burdensome" because it is placed on not just one individual, but many other worshippers. *Id.* at 1173. And while the financial hardship accompanying the land use denial is also a basis for finding irreparable harm, *id.*, the uniqueness of the property is even more so, in that "every piece of property is unique and thus damages are an insufficient remedy to the denial of property rights." *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1230 (C.D. Cal. 2002).

### *The Defendants arguments requesting discovery is not supported by case law.*

Nonetheless, the City argues that discovery is needed because of the 7th Circuit's decisions in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003) and *Petra Presbyterian v. Village of Northbrook,* 489 F 3rd 846, 851 (7th Cir., 2007). These arguments must be rejected.

In *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005) the Court limited the *Civil Liberties* case to the facts of the case. The *Sts. Constantine* substantial burden test aims to protect religious groups from "subtle forms of discrimination when, as in the case of the grant or denial of zoning variances, a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards." *Id.* at 900. Contrary to the arguments of the City, there is no burden shifting requiring the Church to prove it can find other land. *Id.* And once the Church proves a

8

substantial burden without a governmental compelling interest to justify it, then "the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision." *Id.* Thus, the law in the Seventh Circuit held that the substantial burden requirement is satisfied, even assuming that there was other land on which a church could build, based on delay, uncertainty and expense that it would incur in having either to sell this land and find a suitable alternative parcel or having to restart permit process to satisfy zoning authority about. Under this standard, a court can find a substantial burden "where a church's future efforts to locate another parcel of property or file new land use applications would result in delay, uncertainty, and expense." *Id.* at 901. This is precisely the situation faced by Carlinville Southern Baptist Church in this case.

The *Sts. Constantine* Court limited *Civil Liberties* **to the facts of that case** because in that case, the plaintiff churches were challenging Chicago's zoning ordinance, which required them to obtain a permit to build in commercial areas. *Sts. Constantine*, supra, 396 F.3d at 899-900. The court in *CLUB* used these facts to conclude that such a permit process does not impose a substantial burden, and that to satisfy this requirement, the Church would have to show that there was no other parcel of land on which it could build its church. In *Sts. Constantine*, because the plaintiffs weren't arguing that having to apply for a variance to be allowed to build in a residential area is a substantial burden, but rather that having either to sell the land that it bought and find a suitable alternative parcel or be subjected to unreasonable delay by having to restart the permit process was a substantial burden. 396 F.3d at 899-900.

*Sts. Constantine's* standard is applicable in this case. There is such a "whiff of bad faith," *id.* at 901, arising from the City Council's denial and its subsequent run-around during settlement negotiations, that it shows that even if the Church searched for more properties,

9

another permit to use the property as a church would most certainly be denied as the Mayor is so adamantly against Churches due to the loss of tax revenue. *Id.*[5]

This shows why *Sts. Constantine* is applicable to CSBC's situation. The record shows, right now, without further discovery, that the Mayor is so against having churches in its city for economic reasons, and the Mayor has acted in bad faith, that there is reason to believe that another application for use even in on another site would be rejected. The focus is on the City's behavior, not on the Church's reasoning for buying the land in the first place.

The Ninth Circuit applied the *St. Constantine* substantial burden test in *Guru Nanak Sikh Society of Yuba City* v. *County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006). There, it is clear that in proving a substantial burden, the focus is not on the Church's reasoning for seeking the land use or availability of other land, but rather the reasons behind the County's decision for denying the Church's 2 CUP applications. Accordingly, interpreting RLUIPA, the Ninth Circuit has held: "[F]or a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* at 989 citing *San Jose Christian v. City of Morgan Hills*, 360 F.3d 1024, 1034 (9th Cir. 2004)  The Ninth Circuit interpreted *Sts. Constantine* as finding that, to prove a substantial burden under RLUIPA , a religious group need not show that there was no other parcel of land on which it could build its church. The court noted that it was not deciding that failing to provide a religious institution with a land use entitlement for a new facility for worship necessarily constitutes a substantial burden pursuant to RLUIPA, however, it did decide the County imposed a substantial burden based on two considerations: (1) that the County's broad reasons given for its tandem denials could easily

---

[5] The Ninth Circuit applied this substantial burden test in *Guru Nanak Sikh Society of Yuba City* v. *County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006). There, it is clear that in proving a substantial burden, the focus is not on the Church's reasoning for seeking the land use or availability of other land, but rather the reasons behind the County's decision for denying the Church's 2 CUP applications.

apply to all future applications by Guru Nanak; and (2) that Guru Nanak readily agreed to every mitigation measure suggested by the Planning Division, but the County, without explanation, found such cooperation insufficient. *Id.* at 989.

In footnote 12, the Ninth Circuit acknowledge the County's argument that *San Jose Christian* instead defined the phrase "substantial burden" by reference to the Seventh Circuit opinion in *Civil Liberties* that adopted a narrower definition of the phrase. *Compare San Jose Christian*, 360 F.3d at 1035 ("Our holding is entirely consistent with the Seventh Circuit's recent ruling ... [that] the City's regulations in this case do not render religious exercise effectively impracticable " (emphasis added)), with *Civil Liberties*, 342 F.3d at 761 ("We therefore hold that ... a land-use regulation ... imposes a substantial burden on religious exercise [if it] necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise-including the use of real property for the purpose thereof within the regulated jurisdiction generally-effectively impracticable." (emphasis added)).

The Ninth Circuit disagreed with this understanding of *San Jose Christian*. After announcing its holding which defined the phrase "substantial burden," *San Jose Christian* referred to *Civil Liberties*, and then simply noted that *San Jose Christian* "is entirely consistent [with *Civil Liberties* ]." *Id.* at 1035. Failure by San Jose Christian College to present a complete land use application failed the more lenient "oppressive to a significantly great extent" test as well as the "effectively impracticable" test. The Ninth Circuit emphasized that "[t]hat is the consistency; it does not mean the former case adopted the latter case's test." 456 F.3d at 989.

Like CSBC was assured that rezoning would be okay and then twice dangling settlements in front of it during mediation, in denying Guru Nanak's second application, the Board of Supervisors assured Guru Nanak that it would support a future application "if it was in the right location ... closer towards Yuba City ... further to the north of this site along with several other

churches." The Board of Supervisors also advised that it would informally cooperate with Guru Nanak to locate a suitable site. Admittedly, the availability of other suitable property weighs against a finding of a substantial burden. *See San Jose Christian*, 360 F.3d at 1035. **However, RLUIPA does not contemplate that local governments can use broad and discretionary land use rationales as leverage to select the precise parcel of land where a religious group can worship.** *See Saint Constantine*, 396 F.3d at 900. Moreover, given that Guru Nanak had repeatedly followed the guidance of governmental bodies about how to obtain a land entitlement to no avail, the Court gave no credit to the Board's offer to cooperate as assuring Guru Nanak's future success.

The Ninth Circuit's decision contrasted with the facts present in *San Jose Christian*, where the Ninth Circuit found the plaintiff had not suffered a substantial burden because the city's actions had not lessened the possibility that the college could find a suitable property. In *San Jose Christian*, the court considered it centrally important that there was no evidence to suggest that the religious institution desired by San Jose Christian College could not be obtained merely by "submitt[ing] a complete application." *San Jose Christian*, 360 F.3d at 1035 ("Should College comply with this request, it is not at all apparent that its re-zoning application will be denied."). Moreover, the court noted that even if its complete application were denied, the college had no reason to believe another application would be rejected. *Id.* ("[There is] no evidence in the record demonstrating that College was precluded from using other sites within the city."). *See also Henderson* v. *Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) ("Because the Park Service's ban on sales on the Mall is at most a restriction on one of a multitude of means, it is not a substantial burden on their vocation.") (emphasis added).

This shows why *Sts. Constantine* is applicable to CSBC's situation. The record shows, right now, without further discovery, that the Mayor is so against having churches in its city for

12

economic reasons, and the Mayor has acted in bad faith, that there is reason to believe that another application for use even in on another site would be rejected. The focus is on the City's behavior, not on the Church's reasoning for buying the land in the first place.

Finally, in *Petra Presbyterian, vs. Village of north Brooke,* 489 F.3d 846, 851 (7th Cir. 2007) (Posner, J.) a decision written by the same author of *Sts. Constantine,* the Court applied the *Sts. Constantine* substantial burden test, by showing that (1) it had a reasonable expectation of obtaining the use, or (2) the denial was so utterly groundless as to create an inference of religious discrimination. The record herein so complete with evidence of bad faith and ulterior motivations behind every decision the City Council and Mayor have made during the course of this case that application of *Petra* confirms a substantial burden.

### *In balancing the burden of discovery with the delay it will place on the Church compels the denial of Defendants Postponement Motion.*

In balancing the burden of the discovery with the delay it will place on the Church, the balance of harms certainly falls on the side of the Church. *Harbert Int'l, Inc. v James.,* 157 F 3rd 1271, 1280 (11th Cir., 1998). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (citing *New York Times Co. v. United States,* 403 U.S. 713 (1971)); *see also Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod* for the conclusion that "the Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.")

Further, the practical effect of delay is staggering. The Church has lost its financing for construction of its facility due to the undue delay, expense and uncertainty of this case. Based upon the good faith assurances of a conclusive settlement by the Mayor, its attorney and insurance company, the Church incurred thousands of dollars of debt in purchasing construction materials for volunteer crews to use in renovating the building City to begin construction within

13

its building through the use of volunteer labor. The Church believed the good faith assurances in purchasing the materials that the City payment would be made. Now it is stretched financially from both the construction materials end and the legal fees end. Moreover, as reported in the local paper by members of the City Council, the City may no longer have insurance coverage for this case to pay the millions of dollars of damages, cost and attorney fee's it will pay once the case is resolved. *Exhibit 1*

The Mayor simply wanted to punish the Church for not selling its property to him. This malicious conduct should not be rewarded through delay and the grant of this Motion.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff, Carlinville Southern Baptist Church, requests that the Court deny Defendants Rule 56 (f) Motion, grant its Motion for a Preliminary Injunction, its Partial Motion for Summary Judgment and award it the actual cost and attorney fee's incurred in defending this Motion.

Respectfully Submitted,
**TOMKIW DALTON, plc**

/s/ Daniel P. Dalton
Daniel P. Dalton (P 44056)
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI  48067
(248) 591-7000
ddalton@tomkiwdalton.com

And

/S/    David A. Herman
David A. Herman (6211060)
David O. Edwards (6229192)
**Giffin, Winning, Cohen & Bodewes, P.C.**
Attorneys for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701

14

**E-FILED**
Tuesday, 24 June, 2008  04:38:11 PM
Clerk, U.S. District Court, ILCD

Exhibit 1



# SOUTH COUNTY NEWS

*Bringing it all together in South Macoupin County*

Print Page

**TUESDAY JUNE 24, 2008** Last modified: Wednesday, June 18, 2008 3:18 PM CDT

### Council Fails to override Mayor's veto

*By: Dave Ambrose - South County News*
*Wednesday, June 18, 2008 3:18 PM CDT*

A Carlinville alderman has resigned in the wake of the city council's failure on Monday night to override Mayor Robert Schwab's veto of an agreement to settle a federal lawsuit brought against the city by Carlinville Southern Baptist Church.



The council voted 5-4 Monday night to override the veto, falling one vote short of the two-thirds majority needed. Monday night's vote was identical to balloting during a special meeting Thursday, June 5, to accept a settlement agreement between the church and the city. Ald. Lea Hudson, Norm Semrock, John Malin, Elaine Brockmeier and Robert "Sonny" Albertine voted to override the veto. Ald. Randy Ober, Dave Steiner, Brian Mitchell and Joe Deriso voted to sustain the Mayor's veto. A minimum of six votes were needed to overturn the veto.

In the aftermath of Monday's meeting, Ald. Hudson submitted her resignation from the council on Tuesday.

"I have acted in good faith for the long-term good of this community--a community that I love," Hudson said in a prepared statement. "I believe that I can no longer be of good service in my capacity as Alderman and I now choose to resign my position on the city council."

In the meantime, nearly 100 volunteers from Alabama are at the former Wal-Mart store on the west side of Carlinville, working on interior renovations to convert the building for use as a church even as the zoning issue appears to be headed back to federal court.

Carlinville Southern Baptist Church closed on the purchase of the building in January, just days after the city's Zoning and Planning Commission voted to reject the church's petition to rezone the property from commercial to religious use. The Commission's decision was later upheld by the council by a vote of 10-0.

In March, after it was reported that church members had started working on the interior of the building, the city filed a petition in Macoupin County Circuit Court for an injunction to halt the work. On March 18, a day after the city filed its petition, the church filed a lawsuit in federal district court seeking to have the city's zoning ordinance declared unconstitutional because it allegedly interfered with church members' right to worship. A U.S. federal district judge granted temporary injunction allowing the church to use the building for any activities that did not conflict with the property's current zoning pending a resolution of the suit.

The proposed settlement, hammered out by attorneys representing the church, the city and the city's tort insurer, called for the city to issue a special use permit allowing the building to be used for worship services and for the city to pay the church $175,000 in damages.

On Monday, Ald. Hudson sharply criticized Schwab for vetoing the agreement after participating in negotiating sessions to draft the settlement.

"We all acted in good faith," she said. "The fact the Mayor has backed out at this point is a show of bad faith and it reflects poorly on all of us. It distresses me."

Hudson said the Zoning and Planning Commission and the City Council did their jobs in originally denying the petition to

rezone the property. "But over the course of time, things change," she said. "No one anticipated a long legal battle over this."

The church's suit was brought under the federal Religious Land Use and Institutionalized Persons Act (RLUIPA). While Hudson admitted the court found in favor of an Illinois municipality in a recent RLUIPA case, "the city loses in the overwhelming preponderance of cases."

She put the city's chances of winning in court at no better than 50/50.

"We're not admitting we did anything wrong because we didn't do anything wrong," she said. "This is about risk management. It's time to let it go. I'm strongly in favor of settling this case."

She suggested that had Ald. Don Daugherty not died before the council's special meeting, the vote would have 6-4 to accept the agreement. But even a 6-4 vote would not have been enough to override a mayoral veto.

Schwab defended his veto saying, "the zoning change is not in the best interest of the community."

The Mayor cited a "recent federal case which is very similar to our situation and which supports the city's decision to deny the rezoning request." The ruling that case--Petra Presbyterian Church vs. Village of Northbrook--was affirmed in the Seventh Circuit Court of Appeals. In that case, a church purchased property that was zoned for industrial use. After the Village Board denied the church's petition to rezone the property, the church sued to prevent the village from enforcing its zoning code. In the meantime, the church operated anyway, despite notification from the village that its use of the property was prohibited. The court rejected the church's assertion that it relied upon the invalidity of the village's ordinance when it bought the property.

"When the city council voted to deny the Southern Baptist's rezoning request, 10-0, I told the council that I agreed with their decision," Schwab said. "I still agree with that decision. I have not changed my mind on this. . .I think the city acted legally and properly in denying the rezoning request and therefore, I have vetoed this motion to approve the settlement agreement."

Addressing Hudson's concerns, Schwab said the federal judge who approved the settlement agreement knew he was not in favor of it, even though he served on the negotiating committee, and both parties were aware the settlement was subject to council approval.

"My interest in this is primarily financial," said Ald. Semrock, chair of the city's Finance and Economic Development Committee. "Taking this to federal court, no matter how it is decided, will result in significant cost to the taxpayers. If we go ahead, it will be very expensive and very time consuming--even if win. A lot of those costs will be borne by the taxpayers. If we lose, the cost will be even more. We need sewers. We need fire hydrants. We have widows in this community who are paying property taxes. Is this what they are paying their taxes for?"

Eli Rosenblum, special attorney appointed by the city's insurer to represent the city, participated in the mediation and advised the city to accept the settlement, Semrock said.

"I respect you, Mr. Mayor, but you have no experience in these kinds of suits," Semrock said. "This man (Rosenblum) has more experience than you and he suggests that we settle. I don't understand what you're doing. If this man is correct, it's going to be very expensive and very time consuming. I want to know how expensive."

Semrock asked whether or not the insurer would cover damages in excess of $175,000 if the case goes to court and the city loses.

"I represent the City of Carlinville," Rosenblum said, adding that a decision about the coverage to which the city would be entitled would be made at a level above him. "I can only be a litigant. I don't make decisions on coverage. My loyalty is to Carlinville."

Rosenblum added, however, that most tort liability policies include a clause regarding cooperation between the insurance company and the insured. "It is a possibility," he said, that the insurance company might not cover damages in excess of the settlement agreement.

Additional charges the city may incur because of the involvement of City Attorney Will Hebron would not be covered, Rosenblum said. Hebron said he would not be participating in the federal case because "I don't have experience practicing in federal district court." However, he said, he might be involved in helping Rosenblum collect facts to bolster the city's case in court.

"Typically the City Attorney does not get paid by the insurance company," Rosenblum said. "But I want you to know, if this case goes forward, I would want Will assisting me as much as possible."

Semrock noted the involvement of the Alliance Defense Fund, a group of Christian lawyers, which is backing the church's case against the city.

"There are resources available to the other side in this question that we may not have as a city," Semrock said. "Our chances are 50/50. Do you want to roll the dice with our taxpayers' money? I don't."

Semrock's motion to override the veto was seconded by Hudson, but failed to achieve the two-thirds majority needed to negate the veto.

Even as the city council debated the Mayor's veto, nearly 100 members of the Chilton Baptist Builders of Clanton, Ala., descended on the former Wal-Mart store to spend a week working on the interior of the proposed new Southern Baptist Church.

"Some of them are taking their vacation, some of them closed their businesses for a week and some of them are taking a week off from work unpaid," said Tommy Bishop, coordinator for the group.

The group arrived on Monday. By Tuesday, most of the interior framing to partition the building into office space and classrooms had been installed. Wiring was being run, drywall and insulation was being installed and a proscenium was taking shape in the area that is expected to become the church sanctuary.

Most of the workers were from the Clanton, Ala., area, but Bishop said about 20 were from other states--people who have joined up with the Builders after the group completed projects in their communities.

"We build all sizes of churches," Bishop said. "For almost every church we build, there will be people who join us the next year."

The group in Carlinville includes people from Kentucky, Virginia, Missouri and Texas. Among the volunteers were an electrical contractor, about 10 building contractors and a plumber. Other volunteers come from all walks of life, including business owners, managers, laborers, mechanics and even retirees.

Bishop said the group includes about 15 women, who prepare meals for the workers and make sure the workers have plenty of water during working hours.

"Most of the time we build wooden structures," Bishop said. "We start with a slab and we'll put up a 23,000-square-foot building in a week."

In other action on Monday night, the city council approved on second reading an ordinance to impose a 25-mile-per-hour speed limit throughout the Bluffs subdivision. Council members also approved on second reading amendments to the zoning code. Those amendments address uses allowed in areas zoned for agricultural, religious and rehabilitative uses, adjusts fees charges for temporary construction permits and defines how those permits must be displayed.

Early in the meeting, Mayor Schwab announced that he is accepting applications from interested citizens who would like to complete the term of the late Ward 2 Ald. Don Daughterty. Daugherty's term was set to expire after next year's municipal election.

On a motion by Ald. Deriso, the council voted to accept the resignation of Carlinville Police Department Detective Gary Sanson and to add Sanson to the roster of part-time police officers. Deriso said no decision has been made to replace Sanson immediately.

"The chief is talking to several candidates and we are not ready to make a recommendation at this time," Deriso said.

Schwab said at least two current police officers are interested in the position. Current plans are to let each of the candidates serve temporarily in the capacity of detective for a period of 30 days each, after which Police Chief Dave Haley may chose to recommend one of the officers for promotion.

Deriso said it may not be necessary to hire an additional police officer after that decision is made.

In a related matter, the council voted following a 10-minute executive session to advertise for applicants to fill the position of part-time police dispatcher.

Council members also voted unanimously to allow the Carlinville Rotary to use the city square for its annual ice cream social on the evening of Friday, July 25, in conjunction with the Chamber of Commerce's sidewalk sales promotion.

With Ald. Malin and Semrock voting no, the council gave the Finance and Economic Development Committee power to act on a request from Macoupin TAILS to sponsor a hole for the group's upcoming golf tournament at a cost of $100.,

Council members unanimously approved expenditure of $12,425 for the purchase of communications equipment from Ron Whiteside Co. Deriso said the equipment was needed for the Fire Department because the city's current 911 frequency is in conflict with the radio frequency used by a construction company in nearby Springfield.

On the recommendation of the Zoning and Planning Commission, the council approved a variance allowing Bernard Helting to add onto an existing garage at 303 North Broad Street; approved a three-foot setback variance to allow Ron Convery to replace a single-car garage with a two-car garage at 414 South Broad Street; approved a variance allowing John Koster to enlarge the offices of Area Heating and Cooling at 22 1/2 West Second South Street; approved a variance permitting Daniel and Beth Pruitt to install an above ground pool and surround with a deck at 318 West Second South Street; and approved a variance allowing George Luttman to build a second story deck behind a commercial building he owns in the 100 block of West Main Street.

The council deferred action for two weeks on a zoning variance that would allow Chance Newingham to build a two-car garage at 707 West Cherry Street. Ald. Malin noted there is enough room on Newingham's property to accommodate the garage without a variance. "I don't know why we would approve a variance when there's that much space," he said.

3:08-cv-03074-JES-CHE    # 17-2    Page 5 of 5

-- CLOSE WINDOW--