UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CARLINVILLE SOUTHERN BAPTIST
CHURCH, an Illinois Religious
Corporation,

    Plaintiff,

v.

CITY OF CARLINVILLE, ILLINOIS, a
municipal corporation, and the CITY OF
CARLINVILLE PLANNING/ZONING
COMMISSION, a municipal body,

    Defendant.

Hon. Jeanne E. Scott
Magistrate Judge Charles H. Evans
Case No. 3:08-cv-3074

---

**Tomkiw Dalton, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff, *lead counsel*
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 (Fax)
ddalton@tomkiwdalton.com

**O'Halloran Kosoff Geitner & Cook, LLC**
Elisha S. Rosenblum
Attorney for Defendant
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile: (847) 291-9230
esrosenblum@okgc.com

**Giffin, Winning, Cohen & Bodewes, P.C.**
David A. Herman (6211060)
David O. Edwards (6229192)
Co-Counsel for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

---

## PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

1.    Plaintiff incorporates the Statement of Facts in the Verified Complaint and Brief in Support of the Motion for Preliminary Injunction.

2. On June 5, 2008, during mediation, Mayor Robert Schwab and City Council of Carlinville negotiated a settlement with the Church. That day, the Court entered a Minute Entry stating, "CONDITIONAL SETTLEMENT REACHED subject to approval by the City Council of the City of Carlinville." See **Docket Sheet**.

3. The same day, the City Council approved the settlement with a two-thirds majority vote.

4. All of the material terms were defined and agreed upon, there was sufficient consideration, and there was a meeting of the minds on all material terms, thus a binding and enforceable oral settlement agreement was formed at the mediation proceedings.

5. The insurance defense attorney appointed by the City's insurer to represent the City and participate in the mediation, advised the City to accept the settlement. Dave Ambrose, *Council Fails to Override Mayor's Veto*, South County News, June 20, 2008. Despite negotiating the settlement himself, the City Council's approval and the City attorney's recommendation, the Mayor vetoed the settlement. The Mayor said, "When the City Council voted to deny [the Church's] rezoning request, 10-0 [in February, 2008], I told the council that I agreed with their decision. I still agree with that decision. I have not changed my mind on this …." *Id.*

6. On June 16, 2008, in an attempt to override the Mayor's veto, the City Council held a meeting. Although the Council voted 5-4 to override the veto, there were insufficient votes to reach the required two-thirds. As a result, Carlinville alderman Lea Hudson resigned after the failure, stating that "The fact that the Mayor has backed out at this point is a show of bad faith and it reflects poorly on all of us. It distresses me." *Id.*

7. The Mayor negotiated the settlement in bad faith by making statements, during this Court's mediation proceedings, to the effect that the City will settle the claim and that he would approve a settlement.

8. The Mayor has actively impeded this litigation by (1) evading service and leading the process server on a car chase, requiring the City Attorney to accept service on the Mayor's behalf; (2) publicly admitting that the Church will never get to use the property because this case boils down to economics; (3) vetoing the settlement that he negotiated and that was approved by a majority of the City Council, and (4) generally using his power to create obstacles and hurdles for the Church at every turn of this case.

9. As such, the Mayor's veto should be held to have no effect on the City Council's approved settlement agreement because (1) a valid, enforceable oral settlement agreement was formed by the City and Church; (2) all that was needed to form an enforceable agreement was the City Council's majority vote of approval; and (3) equity and public policy demand that the Mayor's veto, due to Mayor's ill-motivated behavior and the City Council's approval of the settlement, should have no effect and the settlement agreement should be enforced by this Court.

**WHEREFORE,** for the foregoing reasons, as well as those stated in the attached Memorandum in Support, Plaintiff, Carlinville Southern Baptist Church, respectfully requests this Court enter GRANT its Motion to Enforce Settlement Agreement and

1. to join as a party defendant, if necessary to implement the settlement, the Mayor of the City of Carlinville as a City Officer to the extent he is responsible for and authorized to implement the terms of the Settlement Agreement, and to execute any settlement check;

2. to Order and direct, under penalties of Contempt of Court, the enforcement of the settlement set forth in the approved Settlement Agreement; and

3. the imposition of such other and further attorney fees as the Court finds just to make whole Plaintiff for the unjustified and improper delay in the completion of the settlement of this matter.

**Respectfully Submitted,**
**Carlinville Southern Baptist Church, Plaintiff**

By: /s/Daniel P. Dalton
One of its Attorneys

Lead Counsel
Daniel P. Dalton
**TOMKIW DALTON, plc**
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
ddalton@tomkiwdalton.com

Local Counsel
David A. Herman (6211060)
David O. Edwards (6229192)
GIFFIN, WINNING, COHEN & BODEWES P.C.
Attorneys for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois 62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CARLINVILLE SOUTHERN BAPTIST
CHURCH, an Illinois Religious
Corporation,

  Plaintiff,

v.

CITY OF CARLINVILLE, ILLINOIS, a
municipal corporation, and the CITY OF
CARLINVILLE PLANNING/ZONING
COMMISSION, a municipal body,

  Defendant.

Hon. Jeanne E. Scott
Magistrate Judge Charles H. Evans
Case No. 3:08-cv-3074

---

**Tomkiw Dalton, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff, *lead counsel*
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 (Fax)
ddalton@tomkiwdalton.com

**O'Halloran Kosoff Geitner & Cook, LLC**
Elisha S. Rosenblum
Attorney for Defendant
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile: (847) 291-9230
esrosenblum@okgc.com

**Giffin, Winning, Cohen & Bodewes, P.C.**
David A. Herman (6211060)
David O. Edwards (6229192)
Co-Counsel for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

---

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

  Plaintiff, Carlinville Southern Baptist Church, by and through its attorneys, and for its Memorandum of Law in Support of Plaintiff's Motion to Enforce Settlement Agreement, states as follows:

A. **The City and the Church Reached An Enforceable Settlement Agreement.**

On June 5, 2008, during mediation, Mayor Schwab, City Council of Carlinville, and the representatives of the Church spent many hours in Magistrate Judge Cudmore's chambers and fairly negotiated a settlement. The Mayor actively participated in the settlement negotiations and orally represented to the Church to the effect that the City will settle the claim and that he would approve a settlement. All of the material terms were determined during negotiations and that same day, the City Council approved the settlement.

The Seventh Circuit has noted that "Illinois and federal law do not differ significantly with regard to the formulation and enforcement of oral settlement agreements." *Dillard v. Starcon Intern., Inc.*, 483. F.3d 502, 506 (7th Cir. 2007) (citing *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002)). *Lynch* noted that there has been "uncertainty" in circuit case law "over whether state or federal law would govern a suit to enforce a settlement of a federal suit" but that the uncertainty "has been dispelled; it is state law." 279 F.3d at 490. *Lynch* further noted that oral settlements are enforceable under Illinois law, and this is "the general rule, not something peculiar to Illinois." *Id.* The Seventh Circuit in *Dillard* further explained how Illinois state law governs settlements of claims arising under federal law:

> The holding in Lynch flowed from the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 380-82, 114 S. Ct. 1673, 128 L.Ed.2d 391 (1994), which established that a settlement of a federal claim is enforced "just like any other contract" under the state law of contracts, "unless it is embodied in a consent decree or some other judicial order or unless jurisdiction to enforce the agreement is retained." *Lynch*, 279 F.3d at 489 (citing *Kokkonen*, 511 U.S. at 380-81, 114 S. Ct. 1673).

483 F.3d at 506. Oral settlement agreements are enforceable under Illinois law if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Brewer v. Nat'l R.R. Corp.*, 628 N.E.2d 331, 335 (Ill. App. 1993)). The

2

essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. *Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (Ill. App. 2005). Whether a "meeting of the minds" occurred depends on the parties' objective conduct, not their subjective beliefs. *Paxton-Buckley-Loda Educ. Ass'n, IEA-NEA v. Ill. Educ. Labor Relations Bd.*, 710 N.E.2d 538, 544 (Ill. App. 1999).

Here, the settlement is enforceable as the parties, during Court-Mediated Settlement Negotiations, came to agreement on the following material terms:

1. The Church was granted a Special Use Permit to develop, construct, maintain, and use the subject property as a church, a playground and related uses.
2. Issuance of all permits necessary to enable the Church to construct the improvements.
3. Immediate commencement of construction.
4. Issuance of a certificate of insurance necessary for any work to be done.
5. Indemnification and Release of Construction-Related Claims against City.
6. Amount of Damages and Attorneys' Fees.
7. Permitted Parking Areas.
8. Payment of Taxes.
9. Dismissal of State Court action.
10. Duty of Good-Faith.
11. Time for Payment.

Also, there was sufficient consideration to form an enforceable agreement. The City and the Church both made mutual promises and gave up certain needs in order to reach a settlement. *See, e.g. Wilson v. Hoffman Group, Inc.*, 546 N.E.2d 524, 530 (Ill. App. 1989) ("Generally, anything of detriment to one side, or benefit to the other, may constitute sufficient consideration to support a settlement."); *Goodwine State Bank v. Mullins,* 625 N.E.2d 1056, 1079-80 (Ill. App. 1994) (concluding that mutual promises constituted consideration for an agreement).

Again, the City's Attorney was present at this Court's Mediation, along with Mayor Schwab and City Council Members, and the Church's representatives. These parties all had a fair chance to bring forth items to include in the settlement and all had a fair opportunity to negotiate the material terms. After much deliberation and with the Magistrate Judge's help, the parties reached a resolution. The Magistrate Judge entered a Minute Entry stating "CONDITIONAL SETTLEMENT REACHED *subject to approval by the City Council* of the City of Carlinville." See **Docket Sheet.** That same day, the City Council approved the settlement with a 2/3 majority vote.

Based on these facts, it is clear that the elements of a contract were satisfied under Illinois state law, and therefore an enforceable settlement contract was formed on June 5, 2008. All of the definite and material terms of the settlement were orally agreed upon at the meeting, and Illinois state law enforces oral agreements. The City Council's majority approval (a condition of the settlement that was satisfied) and the Mayor's participation in the negotiations, as well as the Mayor's oral representations to the Church regarding his approval of the settlement, all show that there was a meeting of the minds on all of the definite and material terms of the settlement. Therefore, this Court should enforce the settlement agreement that was fairly negotiated through this Court's mediation process, and that was approved by a majority of the City Council.

**B.    The City Council's Majority Vote Created an Enforceable Settlement Agreement and the Mayor's Veto Should Have No Effect.**

Once the City Council approved the settlement, it became enforceable against the City as a matter of law. In *Davis v. City of Springfield,* 2006 WL 3590185 (C.D. Ill. 2006) (attached as Exhibit 1), this Honorable Court was faced with a Motion to Enforce Settlement Agreement, but opined that since the City Council never passed the ordinance approving the settlement

4

agreement, and no stipulation to dismiss was filed, there was no enforceable agreement with the City. In *Davis,* the Court reasoned that:

> A settlement agreement is a contract. *Air Line Stewards and Stewardesses Assoc., Local 550 TWU, AFT-CIO v. Trans World Airlines, Inc.,* 713 F.2d 319, 321 (7 Cir. 1983). In order to create an enforceable contract with a municipality, the City Council must enact an ordinance approving the agreement. *Springfiled City Code* § 31.11(b); Illinois Municipal Code, 65 ILCS 5/3.1-40-40.

*Id.* at *1. Because there was no affirmative vote by the City Council, which was made clear to the plaintiff as a prerequisite to effectuate a binding settlement, this Court could not grant Davis' request to enforce the settlement agreement. The facts of this case are sufficiently similar and different from those in *Davis,* and therefore, even in applying this case, this Court can find that the City of Carlinville entered into a binding settlement agreement with an affirmative vote by City Council.

Like the settlement in *Davis,* City Council approval was a condition for the settlement to be reached. Here, the Magistrate Judge's Minute Entry proves that the only step after the material terms were determined during mediation was City Council approval. However, unlike *Davis,* the City Council for Carlinville held a meeting, conducted a vote, and *approved* the terms of the settlement with a 2/3 majority. Once the City Council voted to approve, this constituted "City Council approval" to satisfy the conditional settlement, and thus the settlement became enforceable and the City became bound by its terms. The Mayor's approval or vote was not required, as is true under the Illinois Municipal Code, 65 ILCS 5/3.1-40-40, cited by this Court in *Davis. See McLean v. City of East St. Louis,* 222 Ill. 510 (1906) (concluding where there is no tie, the mayor is not entitled to vote and cannot be counted as a member to make the majority; and his approval of the measure will not give it validity); *Siegel v. City of Belleville,* 349 Ill. 240 (1932) (interpreting the statute and concluding the city council consists of the mayor and

5

aldermen; the mayor presides at all meetings of the council, but has no vote except in the case of a tie, when he shall cast the deciding vote).

Even though the Mayor subsequently disapproved the settlement, and nothing was reduced to writing, an oral settlement is binding on the parties even though it is intended to later be reduced to writing, and a party to a settlement cannot avoid the agreement merely because it subsequently changes its mind about the value of the claim. *Taylor v. Gordon Flesch Co., Inc.*, 793 F.2d 858, 862-63 (7th Cir. 1986). Furthermore, once a settlement is reached, it cannot be repudiated by the parties. *DeBose v. Mueller*, 552 F. Supp. 307 (N.D. Ill. 1982). Thus, the City is bound by the approved settlement.

### C.   Equity and Public Policy Demand The Mayor's Veto Should Have No Effect and the City Should Be Estopped from Denying a Settlement was Reached.

Despite negotiating the settlement himself, his oral representations to the Church regarding his approval of the settlement, the City Council's subsequent majority approval, and the City attorney's recommendation to settle, the Mayor vetoed the settlement. However, the facts and history of this case-- the Mayor's ardent opposition to the Church, his bad faith in dealing with the Church, and his active participation in negotiating the terms of settlement— reveals that this veto should be held to have no effect. The Seventh Circuit, in recognizing the Court's role a supervisor of litigation, along with numerous other federal circuits, has stated that district courts possess the inherent or equitable power summarily to enforce an agreement to settle a case pending before it. *Wilson v. Wilson*, 46 F.3d 660 (7th Cir. 1995) (citing cases from Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and D.C. circuits in agreement). Therefore, this Court should find that the settlement agreement, negotiated during mediation proceedings and approved by the City Council, is enforceable, and should use its equitable power to hold that the Mayor's veto has no effect.

The Mayor has actively impeded this litigation and has negotiated a settlement in bad-faith and has maintained ill motivations to create hurdles and obstacles at every turn. The Mayor evaded service and led the process server on a car chase, requiring the City Attorney to accept service on the Mayor's behalf. The Mayor has publicly admitted that this case all boils down to money in his eyes. He sees the Church as a non-taxable entity, and thus has done everything in his power to give the Church the run-around and destroy its chances at using its property for religious worship.

The Mayor's behavior, along with the City Council's approved settlement agreement, create the compelling circumstances necessary to invoke the doctrine of estoppel. Equitable estoppel can be applied to municipal corporations and should only be invoked under "compelling circumstances, where to do so would not defeat the operation of public policy." *Nielsn-Massey Vanillas, inc. v. City of Waukegan,* 276 N.E.2d 1201, 1208 (Ill. App. 1995). The doctrine of estoppel may be invoked against a municipality if two prerequisites are met: (1) an affirmative act on the part of the municipality; and (2) inducement of substantial reliance by the affirmative act. *Id.* (citing *Lindahl v. City of Des Plaines* 568 N.E.2d 1306 (Ill. App. 1991)). The affirmative act which induces the plaintiff's reliance must be an act by the municipality itself (i.e. legislation).

Furthermore, an oral commitment, even if not contractually binding, may form a basis for equitable estoppel. *Trossman v. Philipsborn,* 869 N.E.2d 1147, 1176 (Ill. App. 2007). In recent years, the strict requirement that there be a clear and definite promise has been eroded; no longer must a promise be entirely clear or definite. *See Pop's Cones Inc. v. Resotrs Intl Hotel Inc.,* 704 A.2d 1321, 1323-25 (N.J. Super. 1998) (holding defendant's statements, "[w]e are 95% there, we just need Bellisle's signature on the deal," that there would be "little difficulty in concluding an

7

agreement," and advising plaintiff to move its business, as sufficient to support promissory estoppel).

In this case, the elements of promissory estoppel are satisfied: (1) the City's twice-mediated negotiations, and subsequent majority approval of the second mediated settlement are affirmative acts on the part of the municipality; and (2) the Church substantial relied on the City Council's vote to approve and on the Mayor's oral statements in court that the City will settle the claim and that he would approve the settlement. *See Neilsen-Massey,* 657 N.E.2d at 1207 (citing *Guerine v. City of Northlake,* 274 N.E.2d 625 (Ill. App. 1971); *Greene v. City of Danville,* (1953113 N.E.2d 348 (Ill. App. 1953) (noting that "it has been held that assurances by city officials, including the mayor, cannot bind the municipality in the absence of approval by a majority vote of the city council"). As such, the City is bound by its affirmative act of approving the settlement and by the Mayor's assurances of settlement. Thus, the Mayor's veto has no effect and the City is now estopped from denying that an enforceable settlement agreement was reached between the City of Carlinville and Carlinville Southern Baptist Church.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff, Carlinville Southern Baptist Church, requests that the Court enter an Order granting its Motion to Enforce Settlement Agreement.

**Respectfully Submitted,
Carlinville Southern Baptist Church, Plaintiff**

By: /s/Daniel P. Dalton
One of its Attorneys

Lead Counsel
Daniel P. Dalton
**TOMKIW DALTON, plc**
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI 48067

8

(248) 591-7000
ddalton@tomkiwdalton.com

Local Counsel
David A. Herman (6211060)
David O. Edwards (6229192)
GIFFIN, WINNING, COHEN & BODEWES P.C.
Attorneys for Plaintiff
One West Old State Capitol Plaza
Suite 600
Springfield, Illinois   62701
(217) 525-1571 (office)
(217) 525-1710 (fax)
dherman@giffinwinning.com
davidoedwards@giffinwinning.com

## PROOF OF SERVICE

I, the undersigned, hereby certify that on June 24, 2008, I filed this Memorandum in Support of Plaintiff's Motion to Enforce Settlement Agreement with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendants: Elisha S Rosenblum, Clifford G Kosoff, and Jane M May of the law firm, O'Halloran, Kosoff, Geitner & Cook, P.C. 650 Dundee Road Northbrook, IL 60062

By: /s/Daniel P. Dalton
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI 48067
Tel: (248) 591-7000
Respectfully Submitted,

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(B)(4) the undersigned counsel hereby certifies that this brief complies with the type-volume limitation found at Local Rule 7.1(B)(4)(b). It contains 2599 words, and has been prepared in Microsoft Word 2003, using a proportionally spaced font, Times New Roman, and a 12-point font size.

Respectfully Submitted,
**TOMKIW DALTON, plc**
/s/ Daniel P. Dalton
Daniel P. Dalton (P 44056)
Attorney for Plaintiff