E-FILED
Friday, 25 July, 2008 02:31:02 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CARLINVILLE SOUTHERN BAPTIST CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Jeanne E. Scott |
| | ) | Magistrate Judge Charles H. Evans |
| | ) | Case No.:  3:08-cv-3074 |
| CITY OF CARLINVILLE, ILLINOIS, a municipal corporation, and the CITY OF CARLINVILLE PLANNING/ZONING COMMISSION, a municipal body, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

**NOW COME** Defendants, City of Carlinville**,** Illinois and City of Carlinville Planning/Zoning Commission, by and through their attorneys, John I. Schaberg and Roberts, Perryman, Bomkamp & Meives, P. C., and in Response to Plaintiff's Motion to Enforce Settlement, state:

1. **Settlement was not approved**:  There is no question that the Parties, through extensive mediation, arrived at a "CONDITIONAL SETTLEMENT REACHED subject to approval by the City Council of the City of Carlinville." **Minute entry 5-28-08.**  Contrary to Plaintiff's assertions, however, the City Council did not approve the settlement under the statutory procedures required by the Carlinville City Code and the Illinois Municipal Code.  Under those explicit statutes and ordinances, "the City Council"means not just the ten Aldermen, but it also includes the Mayor, who has a unique role in the process of approval of any action of the Council.  As a result, the Conditional

Settlement plainly was not approved by the City Council, and under the statutes, ordinances and authorities discussed below, the settlement cannot be enforced against the City of Carlinville.  See **Davis v. City of Springfield,** 2006 WL 3590185 (C.D. Ill. 2006)

2.  **Factual Record Unsupported**: At the outset of this response, Defendant notes that Plaintiff's "statements" of fact, which are unsupported by affidavit or evidentiary record, need not be considered by this Court and should be stricken and disregarded, See **Fed. R. Civ. P. Rule 43(c)**; see **Stewart v. M.D.F.,Inc.**, 83 F.3d 247, 251 (8th Cir. 1996); similar to the procedures followed on a motion for summary judgment, on any matter asserting facts not found in the pleadings, the court should only consider matters that would be admissible at trial, see **Fed. R. Civ. P. Rule 56(e)**, and **Yeatman v. Inland Property Management, Inc.,** 845 F. Supp. 625, 628 (N.D. Ill. 1994) and **Wells Dairy, Inc. v. Travelers Ind. Co**, 241 F. Supp.2d 945, 956-57 (N.D. Iowa 2003).  The plaintiff's assertions are insufficient for a number of reasons:

(a)    The assertions of fact set forth in Plaintiff's Motion, Paragraphs 3, 5, and 6 are not supported by an affidavit or any evidentiary record.  Apparently the Plaintiff wants the Court to take judicial notice of the newspaper article cited in Paragraph 5, as well as the truth of the specific quotes from that article set forth in Paragraphs 5 and 6.  Not only are these inadmissible hearsay, **Fed. R. Enid. Rules 801 et seq**., but they only tell one side of the story - - from the viewpoint of the two Aldermen who were willing to talk to the newspaper.

(b)    Additionally, the Plaintiff's purported chronology mischaracterize the actions by the City Council.  For example, the dates are incorrect, and contrary to Paragraph 3, the Council did not pass the settlement on June 5 with a "two-thirds majority vote."  See **Exhibits B through F** discussed in Paragraph 3 below.

2

(c)     Additionally, the statement attributed to the Mayor set forth in Paragraph 7 is apparently a statement made during the mediation proceedings, certainly selected out of context from among many other comments made during the long sessions.  This is an improper breach of the confidentiality required by **Local Rule 16.4(E)(7)**, see also **28 U.S.C.A. Section 652(d)**, and it is inadmissible evidence pursuant to **Federal Rules of Evidence Rule 408.** Plaintiff's attorney does not identify his witness or source for the statement.  Defendant cannot respond to this without equally violating the confidentiality provided in Rule 16.4.

(d)     Finally, the "editorial comments" set forth in Paragraph 8 are unsupported by the record and are simply counsel's interpretations, not facts.  There is no sworn affidavit or testimony, nor is a witness even identified to offer any testimony, to support  Item (1), that the Mayor was "evading service and leading the process server on a car chase" (which is irrelevant to this Motion anyway).   Items (2) and (3) do not prove that the Mayor "actively impeded this litigation," but simply that he took a political position and exercised his authority under the City Code and the Illinois Municipal Code as he saw fit.  Last, Item (4) of Paragraph 8 is so vague, self-serving and argumentative as to be unworthy of a response, but fortunately it does not require a response, since it does not amount to admissible evidence supported by the record.

(e)     It is also noteworthy that plaintiff's attorney suggests there was one "settlement agreement" for the City Council to consider, but on the contrary, he would have to admit that there were at least five proposed drafts and redrafts of settlement documents that were exchanged by the parties during the course of the events in question.  It is not clear which "settlement" the Mayor allegedly agreed to approve, which one the City Council voted on, or which one the plaintiff seeks to enforce, but it is incumbent on the plaintiff to prove the terms of the settlement, which is absent

3

from this record.

3. **Official Record**:   To provide the Court with an accurate and substantiated record, Defendant attaches and incorporates by reference the following sworn Exhibits:

**Exhibit A**:   Certified copy of the pertinent provisions of the City Code of Carlinville;

**Exhibit B**:   Certified copy, City Council meeting minutes on June 2, 2008;

**Exhibit C**:   Certified copy, Special City Council meeting on June 5, 2008;

**Exhibit D**:   Certified copy, Veto dated June 5, 2008;

**Exhibit E**:   Certified copy, Veto dated June 16, 2008;

**Exhibit F**:   Certified copy, City Council meeting minutes, June 16, 2008;

These copies, certified by the City Clerk, "shall be evidence in all courts in like manner as if the originals were produced." **65 ILCS 5/3.1-35-90(c)**, and **Fed. R. Civ. P. Rule 44(a)(1)(B), Fed. R. Enid. Rules 902(4) and 1005.**  Defendants also ask the Court to take judicial notice of the Illinois Municipal Code sections cited below.

4.    **Chronology:** The records set forth in Exhibits B through F establish the following chronology:

(a)    After the 5-28-08 minute entry showing "CONDITIONAL SETTLEMENT REACHED" subject to approval by the City Council of the City of Carlinville," the City Council sat in a regular scheduled meeting on June 2, 2008,  to discuss (in a "closed" session) the terms of the settlement.  No vote of the Council was taken at that meeting.  **Exhibit B**.

(b)    The Council held a special meeting on the following Thursday, June 5, 2008.  In the interim, one of the Aldermen had died.  As a result, the vote on Thursday, June 5, 2008 was 5 "ayes"

4

in favor of the settlement against 4 "nays" opposed to the settlement.  The minutes of the special meeting indicate that the Mayor stated he would veto this motion "because he believed it was not for the best interest of the community.  He stated it could be overridden at the June 16 council meeting by a two thirds (sic) vote." **Exhibit C**.  The Mayor delivered a handwritten veto that day **(Exhibit D)**, followed by a more formal typed veto, again stating that it is not in the best interest of the community and can be overridden by a 2/3 vote. **Exhibit E**.

(c)     On June 16, 2008 at its next regular meeting, the City Council brought the matter up for reconsideration in an open session under the "Old Business" portion of the agenda.  Aldermen Hudson and Semrock both made statements, followed by a motion by Alderman Semrock, seconded by Alderman Hudson, to override the veto.  At this time the vote was 5 in favor of override and 4 against override.  This did not meet the two-thirds (6 out of 9 "then holding office") majority required, and the veto was sustained.  **Exhibit F**.

(d)     It is noted that none of the official records set forth which specific version was being considered among the five draft settlement agreements, although the terms are described in general terms in the Minutes of June 5 **(Exhibit C)** Mayor's veto **(Exhibit E)**.

5.  **Statutory Procedures**:  Under the City Council procedures required by the Carlinville City Code and the Illinois Municipal Code, these actions do not amount to "approval by the City Council."  Defendant makes reference to the provisions of the City Code, and in brackets, to the corresponding sections of the Illinois Municipal Code.

In the **City Code §1-2-1**, the City Council "shall consist of the Mayor and ten (10) Aldermen." [**65 ILCS 5/3.1-40-5.**] In Siegel v. City of Belleville, 349 Ill. 240, 181 N.E. 687 (1932), the Supreme Court of Illinois held that the majority consisted of the mayor and the aldermen to

5

comprise a majority of "members elected in the city council."  Under state statues, the City Council

has the authority to determine its own rules of proceeding, **65 ILCS 5/3.1-40-15**, and **City Code §1-2-11.**

Under the City Code and the Illinois Municipal Code, the voting requirements are the same.
Under **City Code §1-2-14(C):**

> **The passage of all ordinances for whatever purpose, and of any resolution or motion (1) to create any liability against a city, or (2) for the expenditure or appropriation of its money, shall require the concurrence of a majority of all members then holding office on the City Council, including the Mayor, unless otherwise expressly provided by the Code or any other act governing the passage of any ordinance, resolution or motion." [65 ILCS 5/3.1-40-40.]**

All such resolutions and motions and all ordinances passed by the City Council may be

approved and signed by the Mayor, or may be vetoed and disapproved by the Mayor under **§ 1-2-14(D) [65 ILCS 5/3.1-40-45]**.  Any vetoed resolution, motion or ordinance shall be reconsidered at

the next regular meeting under **§ 1-2-15**, and the Council may override the veto if two-thirds of all

Aldermen then holding office vote to pass the ordinance resolution or motion. [**65 ILCS 5/3.1-40-50.**]

The Mayor holds a unique position on the City Council.  He presides at all meetings under

§ **1-2-53 [65 ILCS 5/3.1-40-30**], but he

> **shall not vote on any ordinance, resolution, or motion except:**
>
> **(A)    Where the vote of the Aldermen has resulted in a tie; or**
>
> **(B)    Where one-half (½) of the Aldermen elected have voted in favor of an ordinance, resolution, or motion, even though there is no tie; or**
>
> **(C)    Where a vote greater than a majority of the corporate authorities is required by the Illinois Complied Statutes to adopt an**

6

**ordinance, resolution or motion.**

In those instances he "shall vote."

     6.  **By statute, no approval:**  To apply the above-cited provisions of the City Code and the Illinois Municipal Code to the specific actions of the City Council of Carlinville in connection with the mediated settlement, it is clear that the votes by the Aldermen and the veto by the Mayor did not result in "approval of the City Council."  The Mayor, by definition, is a member of and part of "the City Council," **Sec. 1-2-1, and 65 ILCS 5/3.1-40-5.**  There was no vote recorded on June 2, 2008, at the regular meeting.  At the special meeting on June 5, 2008, the 5-to-4 vote was a majority "of all members then holding office on the City Council,"  as required by §1-2-14.  (One of the Aldermen had died, and his vacancy had not yet been filled, so there were ten (10) "elected" Aldermen, but only nine (9) "holding office."  Regardless of that technicality, the outcome would be the same, as the Mayor might then be required to vote under Sec. 1-2-53(B).)  If a majority of the Aldermen "then holding office" approved the motion, the Mayor had the power to approve, veto, or "fail to return" the motion under §1-2-14(D), and he delivered his written veto as allowed by law.

     Finally, the City Council brought up the matter for reconsideration of the veto at its next regular meeting on June 16, 2008.  Since only 5 out of 9 voted to override the veto, the veto was sustained.  Two-thirds would have required 6 out of 9, or a vote of 6-to-3 or better.

     Accordingly, the "CONDITIONAL SETTLEMENT" requiring approval by the Council was never legally approved, and there is no settlement that this Court can enforce against the City of Carlinville.

     7.  **Legal Authorities:**  (a) **Council Approval must follow statutes**. Under the analysis of the recent case decided by this Court in **Davis v. City of Springfield, 2006 WL 3590185 (C.D.**

**Ill. 2006)**, the settlement cannot be enforced against the City of Carlinville. In that case the City of Springfield did not pass an ordinance approving the settlement, as required by the Springfield City Code and by 65 ILCS 5/3.1-40-40, and therefore the Court held there was no settlement to enforce. The oral representations of the City Attorney at the settlement conference were not binding against the city. Similar analyses and similar results were discussed in **<u>Nielsen - Massey Vanillas, Inc. v. City of Waukegan</u>, 276 Ill. App. 3d 146, 657 N.E.2d 1201, 212 Ill. Dec. 856 (1995)** and **<u>City of Belleville v. Illinois Fraternal Order of Police</u>, 312 Ill. App. 3d 561, 732 N.E.2d 592, 247 Ill. Dec. 537 (2000).** All three cases determined that the decision in **<u>City of Burbank v. Illinois State Labor Relations Board</u>, 185 Ill. App. 3d 997, 541 N.E.2d 1259, 133 Ill. Dec. 821 (1989)**, was flawed and should not be followed. An officer or agent, even the mayor, of the city cannot unilaterally bind the city to a contract or settlement that must be approved by the city council under state law and municipal ordinances.

Although the Aldermen voted 5-to-4 to pass the motion, the Mayor was still entitled to veto the motion under the duties and powers granted to him by the Municipal Code and the City Code. To complete the statutory requirements, a two-thirds majority would be required to override that veto. In this case, the 5-to-4 override vote was not sufficient to approve the settlement over the veto.

The essence of this procedural analysis is found in **<u>Martin v. City of Greenville</u>, 54 Ill. App. 3d 42, 369 N.E.2d 543, 12 Ill. Dec. 46 (1977).** The City Council had adopted its Zoning Commission's recommendation to deny the plaintiff's petition to amend the zoning ordinance so it could build apartments on land zoned for single-family houses. After the denial, the plaintiff filed a declaratory judgment action against the City. After one day of trial, the parties negotiated a settlement, with the participation and agreement by 3 of the 5 members of the City Council,

including the Mayor.  Six days after the court entered an order adopting the terms of the settlement,

the City's attorney notified plaintiff's attorney that the full City Council had met and determined that

it lacked authority to amend the ordinance in that fashion.  Plaintiff filed a Motion to Enforce

Settlement, and the trial court granted that motion.  The City took an appeal from the order enforcing

the settlement.

The Appellate Court, Justice Karns, reversed the trial court, and held that the explicit state

and local requirements for amending a zoning ordinance must be followed.  Those included basic

procedures, such as a party filing a petition to amend the ordinance and zoning maps, advance public

notice, a public hearing by the Zoning Commission, forwarding its report to the Council, and then

formal deliberation and public voting by the entire Council.  Those procedures were not followed,

and the settlement, despite the parties' best intentions, was held "null and void."

In so holding, Justice Karns wrote:

> We are mindful of the fact that the legislative process is the product of advice, deliberation and quite often, compromise, and attempts at compromise should be encouraged. . . .  Municipalities have only those powers which are given them by constitution and statute and <u>a municipality cannot be bound by a contract that does not comply with the prescribed conditions for the exercise of its power</u>. . . .  Moreover, <u>a person dealing with a municipality is charged with knowledge of the limitations of authority of the municipality to enter into contracts</u>.  **54 Ill. App. 3d at 44-45, 369 N.E.2d at 545, 12 Ill. Dec. at 48** (emphasis added).

He concluded with the admonition that "a municipality may not, under the guise of compromise,

impair a public duty owed by it, and <u>neither municipal officials nor the trial court may usurp the

legislative process</u>."  **54 Ill. App. 3d at 46, 369 N.E.2d at 546, 12 Ill. Dec. at 46** (emphasis added).

The settlement agreement was beyond the City Council's authority to enter into and be bound by it,

and it was declared "null and void."  **Id**.

9

As in the Carlinville mediation, some of the Greenville city council members, a majority including the mayor, had actively participated in negotiating a settlement of a zoning lawsuit, which the trial court attempted to enforce, and yet the appellate court had determined that the Council had not properly performed its official duties required to pass the ordinance. Only full compliance with the Municipal Code and City Code can result in City Council approval as required by law.  No individual, not even a majority of individuals, can "usurp" that legislative authority.

In this case, the legislative process, which can be unpleasant and unpredictable, resulted in a 5-to-4 technical majority, and it was within the legislative discretion of the Mayor to veto it.  Then it would require even stiffer legislative "advice, deliberation and . . . compromise" for the Council to marshall the necessary willpower to override the veto, which it failed to do.  Perhaps it was the result of aldermen lacking the constituents' support to reach the 6 votes needed, but in any event, it was the result of the proper, complete legislative process that the motion to approve the settlement, and the motion to reconsider the veto, failed to pass.  No single person was responsible for this result, but if it can be attributed to the Mayor's veto, that was clearly within his authority by law, after the legislative, deliberative, consultative process was fulfilled, regardless of what may have been said earlier in the mediation, before the legislative process even began.  He cannot and should not give up his veto before the legislative process takes place, any more than he can exercise his veto before that process begins.

(b)  **No Estoppel Applies**:  Contrary to Plaintiff's argument about estoppel and public policy, this case does not meet the requisite elements for estoppel to apply.  Under **Lindahl v. City of Des Plaines, 210 Ill. App. 3d 281, 568 N.E.2d 1306, 154 Ill. Dec. 857 (1991)**, the court held that the doctrine of the estoppel could only apply to a city if there was (1) an affirmative act of the city,

and (2) the act induced substantial reliance by the plaintiff. **210 Ill. App. 3d at 295, 568 N.E.2d at 1316, 154 Ill. Dec. at 867**. The Court held, however, that the act of a supervisor was not the act of the city, and that there was neither detrimental reliance by the plaintiff, nor fraudulent intent on the part of the city. The court said that estoppel against a city is not favored, and that anyone who enters into a contract with a municipal body is charged with presumed knowledge of the limitations of that body in its ability to enter into a binding contract, and therefore no detrimental reliance could arise. Id. Similar results were found in **Guerine v. City of Northlake, 1 Ill. App. 3d 603, 274 N.E.2d 625 (1971)** and **Greene v. City of Danville, 350 Ill. App. 440, 113 N.E.2d 625 (1953)**, where the Courts held that oral assurances by the city mayors could not result in binding estoppel against the city. In all of those cases, a contract with the city was not valid unless there was approval by the city council under the Illinois Municipal Code, which did not occur. The party who entered into negotiations with the city was charged with knowledge of the limitations of the city in entering into such contracts without specific approval by the city council. The same results were found in the **Nielsen** and **City of Belleville** cases discussed above. "Assurances by city officials, including the mayor, cannot bind the municipality in the absence of approval by a majority vote of the city council." **Nielsen-Massey Vanillas, Inc. v. City of Waukegan, 276 Ill. App. 3d at153, 657 N.E. 2d at 1207, 212 Ill. Dec. at 862.** That is a clear statement that public policy would not be served by enforcing this settlement against the City based on the "assurances" of approval by the mayor during a confidential mediation.

Finally, even if estoppel were to apply against the City in this case, there is no reliance by the Church on the "CONDITIONAL SETTLEMENT," since the Church was well aware that the deeply divided City Council had to approve the settlement before it was effective and binding. Furthermore, there can be no detriment suffered by the Church resulting from reliance on the City Council to

11

approve the settlement: not only is the Church presumed to have knowledge of the procedural requirements for approval by the Council, but the time has been so short that no damage could be suffered, other than what they have already alleged in their Complaint.

(c)  **No repudiation:**  Plaintiff argues that the City is "repudiating" the settlement and cites several cases in support of that argument.  On the contrary, it is the City's position that the settlement was never approved, that it was a "CONDITIONAL SETTLEMENT" that required City Council approval, and that failure of that approval means there is no settlement to enforce.  The City is not repudiating a settlement that it approved, but it is asserting that the prerequisite contingency of Council approval never came to pass.

8.  **No bad faith**:  One further argument ought to be considered here.  Plaintiff makes an argument that the settlement must be forced on the City because the Mayor "acted in bad faith" by stating that he would approve the settlement if the City Council approved it.  Not only is this argument lacking in evidentiary value, but it is a serious breach of confidentiality of the mediation process, which jeopardizes the integrity of that process.  There were many statements made by the participants in the mediation, and defendant can neither explain nor respond to plaintiff's  assertion without equally violating the local rules of confidentiality and general principles of mediation. Even so, that statement by the Mayor would not amount to bad faith on the part of the Mayor or of City itself.  The City should not be bound by estoppel for the conduct or statements of an officer, any more than it would be bound by an oral offer to enter into a contract without City Council approval. See **Lindahl,** above. In this case a veto-proof majority and legislative "will" did not exist, and therefore the Mayor was completely within his duties, responsibilities and discretionary authority in declaring his veto.  On the other hand, perhaps the plaintiff's attorney - who does not disclose his

12

"source" for the statement he attributes to the Mayor during the confidential mediation sessions - - has misquoted him, taken his statement out of context, or misunderstood him - - defendant does not choose to take the bait and argue with plaintiff over who said what to whom at the mediation.  The courts have provided the shield of confidentiality to protect the mediation process, which requires a spirit of openness and compromise, and not to generate evidence to be wielded when it becomes convenient as a sword.

For all of the foregoing reasons, the Court should deny Plaintiff's Motion to Enforce Settlement and allow this case to proceed according to its previous scheduling order.

Respectfully submitted,

THE CITY OF CARLINVILLE

By:  /s/John I. Schaberg
ROBERTS, PERRYMAN, BOMKAMP & MEIVES, P. C.
Attorneys at Law
6400 West Main Street, Ste. 3H
Belleville, IL 62223
Co-Counsel for Defendant

## PROOF OF SERVICE

I, the undersigned, hereby certify that on July 25, 2008, I filed this Response in Opposition to Plaintiff's Motion to Enforce Settlement with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Plaintiffs: Daniel P. Dalton of the law firm, Tomkiw Dalton, PLC, 321 Williams Street, Royal Oak, MI 48067 and David A. Herman and David O. Edwards of the law firm, Giffin, Winning, Cohen & Bodewes, P. C., One West Old State Capitol Plaza, Ste. 600, Springfield, IL 62701 and Defendant: Mr. Elisha S. Rosenblum, O'Halloran, Kosoff, Geitner & Cook, LLC, 650 Dundee Road, Ste. 475, Northbrook, IL 60062.

By:  /s/John I. Schaberg
ROBERTS, PERRYMAN, BOMKAMP & MEIVES, P. C.
Attorneys at Law
6400 West Main Street, Ste. 3H
Belleville, IL 62223
Co-Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(B)(4) the undersigned counsel hereby certifies that this brief complies with the type-volume limitation found at Local Rule 7.1(B)(4)(b).  It contains 790 words, and has been prepared in Microsoft Word 2007, using a proportionally spaced font, Times New Roman, and a 12-point font size.

By:  /s/John I. Schaberg
ROBERTS, PERRYMAN, BOMKAMP & MEIVES, P. C.
Attorneys at Law
6400 West Main Street, Ste. 3H
Belleville, IL 62223
Co-Counsel for Defendant

*Carlinville City Code*

## ARTICLE II - CITY OFFICIALS

### DIVISION I - CITY COUNCIL

**1-2-1**    **CITY COUNCIL.** The City Council shall consist of the Mayor and ten (10) Aldermen, two (2) from each of the five (5) wards, and their term of office shall be for four (4) years, and until their successors are elected and have qualified. **(See 65 ILCS Sec. 5/3-4-7 and 5/3-11-9)**

**1-2-2**    **REGULAR MEETINGS.** The regular stated meetings of the City Council shall be held in the City Hall Building on the first (lst) and third (3rd) Mondays in each month at 7:00 P.M. When said meeting date falls upon a legal holiday, the meeting shall be held on the next secular day at the same hour unless otherwise provided. Adjourned meetings may be held at such times as may be determined by the Council. Public notice of regular meetings shall be given in accordance with the **Meetings of Public Agencies Act of the State of Illinois, Illinois Compiled Statutes, Ch. 5, Sections 120/1 through 120/5. (See 65 ILCS Sec. 5/3-11-13)**

**1-2-3**    **SPECIAL MEETINGS.** Special meetings of the City Council may be called by the Mayor or any **three (3) Aldermen,** by giving at least **twenty-four (24) hours notice** thereof, by delivering to them personally, written or printed notices of the time of such meeting at the residences of the Aldermen; such notices shall be served by mail, by the Chief of Police, or his designated representative. Said notices shall specify the purpose of said special meeting and the business to be taken up at that time and place. Such notice shall be posted at the City Hall and shall be provided to any local newspaper of general circulation or any local radio or television that has filed an annual request for such notice. The notice shall be provided to such news media in the same manner as the notice is given to the Mayor and members of the City Council, provided such news media has given the City an address within the City at which such notice may be given. **(See 65 ILCS Sec. 5/3-11-13 and 5 ILCS Secs. 120/2.02 and 120/2.03)**

**1-2-4**    **VACANCY.** When a vacancy occurs, if more than **twenty-eight (28)** months remain in the term and the vacancy occurs not less than **one hundred thirty (130) days** before the next consolidated election, the office shall be filled for the unexpired portion of the term by special election at that consolidated election. During the period from the time that the vacancy occurs until the next election of Aldermen, the vacancy may be filled by the appointment of an Alderman by the Mayor with the advice and consent of the City Council. **(See 65 ILCS Sec. 5/3-2-7 and 5/3-4-14)**

DEFENDANT'S EXHIBIT "A"

## DIVISION III - ORDINANCES

**1-2-14      ORDINANCES.**

(A)          **Attorney.** It shall be the duty of the City Attorney to prepare such ordinances as may be required by the City Council.

(B)          **Introduced.** When a proposed ordinance is introduced, it shall be read one time by title only and referred to the proper committee unless the City Council shall otherwise specifically direct. **(See Sec. 1-2-11 regarding Ordinances.)**

(C)          **Vote Required - Yeas and Nays - Record.** The passage of all ordinances for whatever purpose, and of any resolution or motion (1) to create any liability against a city or (2) for the expenditure or appropriation of its money, shall require the concurrence of a majority of all members then holding office on the City Council, including the Mayor, unless otherwise expressly provided by the Code or any other act governing the passage of any ordinance, resolution, or motion; provided that, where the council consists of an odd number of aldermen, the vote of the majority of the aldermen shall be sufficient to pass an ordinance. The yeas and nays shall be taken upon the question of the passage of the designated ordinances, resolution, or motions and recorded in the journal of the City Council. In addition, the corporate authorities at any meeting may be unanimous consent take a single vote by yeas or nays on the several questions of the passage on any **two (2)** or more of the designated ordinances, orders, resolutions or motions placed together for voting purposes in a single group, which single vote shall be entered separately in the journal under the designation "omnibus vote", and in such event the clerk may enter the words "omnibus vote" in the journal in each case in lieu of entering names of the members of the City Council voting "yea" and of those voting "nay" on the passage of each of the designated ordinances, orders, resolutions and motions included in such omnibus group. The taking of such single or omnibus vote and such entries of the words "omnibus vote" in the journal shall be a sufficient compliance with the requirements of this Section to all intents and purposes and with like effect as if the vote in each case had been taken separately by yeas and nays on the question of the passage of each ordinance, order, resolution and motion included in such omnibus group, and separately recorded in the journal. Likewise, the yeas and any other resolution or motion at the request of any alderman and shall be recorded in the journal. **(See 65 ILCS Sec. 5/3-11-17)**

(D)        <u>Ordinances - Approval-Veto.</u>   All resolutions and motions (1) which create any liability against a city, or (2) which provided for the expenditure or appropriation of its money, or (3) to sell any City property, and all ordinances, passed by the City Council shall be deposited with the City Clerk.  If the mayor approved of them, he shall sign them.  Those of which he disapproved he shall return to the City Council, with his written objections, at the next regular meeting of the City Council occurring not less than **five (5) days** after their passage.  The Mayor may disapprove of any one or more sums appropriated in any ordinance, resolution, or motion making an appropriation, and, if so, the remainder shall be effective. However, the Mayor may disapprove entirely of an ordinance, resolution, or motion making an appropriation.  If the Mayor fails to return any ordinance or any specified resolution or motion with his written objections, within the designated time, it shall become effective despite the absence of his signature. **(See 65 ILCS Sec. 5/3-11-18)**

1-2-15      <u>RECONSIDERATION - PASSING OVER VETO.</u>   Every resolution and motion specified in **Section 1-2-14,** and every ordinance which is returned to the City Council by the Mayor shall be reconsidered by the City Council at the next regular meeting. If, after such reconsideration, **two-thirds (2/3)** of all the Aldermen then holding office on the City Council shall agree at such regular meeting to pass an ordinance, resolution or motion, notwithstanding the Mayor's refusal to approve it, then it shall be effective. The vote on the question of passage over the Mayor's veto shall be by yeas and nays and shall be recorded in the journal. **(See 65 ILCS Sec. 5/3-11-19)**

1-2-16      <u>NO VOTE TO BE RECONSIDERED AT SPECIAL MEETING.</u>   No vote of the City Council shall be reconsidered or rescinded at any special meeting thereof unless at such special meeting there are present as large a number of Aldermen as were present when such vote was taken.

1-2-17      <u>RESERVED.</u>

**1-2-53**      **DECIDING VOTE - MAYOR.**      The Mayor shall preside at all meetings of the City Council.  He shall not vote on any ordinance, resolution or motion except:

(A)          Where the vote of the Aldermen has resulted in a tie; or

(B)          Where one-half (1/2) of the Aldermen elected have voted in favor of an ordinance, resolution, or motion, even though there is no tie; or

(C)          Where a vote greater than a majority of the corporate authorities is required by the Illinois Compiled Statutes to adopt an ordinance, resolution or motion.

. In each instance specified, the Mayor shall vote.  Nothing in this Section shall deprive an Acting Mayor or Mayor Pro-tem from voting in his capacity as Alderman, but he shall not be entitled to another vote in his capacity as Acting Mayor or Mayor Pro-tem. **(See 65 ILCS Secs. 5/3-11-14 and 5/3-11-17)**

**1-2-54 - 1-2-55**      **RESERVED.**

## **CERTIFICATION**

I, _DENA   BOSTON_ , Deputy City Clerk of the City of Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of Sections 1-2-1, 1-2-2, 1-2-3, 1-2-4, 1-2-14, 1-2-15, 1-2-16 and 1-2-53 of the Revised Code of Ordinances of Carlinville, Illinois.

_Dena Boston_

SUBSCRIBED and SWORN to before me this _21st_ day of _July_ , 2008.

_Teresa D. Sarginson_
Notary Public

OFFICIAL SEAL
TERESA D. SARGINSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3-28-11

E-FILED
Friday, 25 July, 2008 02:34:43 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS)
MACOUPIN COUNTY)                                          June 2, 2008

## CITY COUNCIL MEETING

**PRESENT:** Albertine, Brockmeier, D. Daugherty, Direso, Hudson, Malin, Mitchell, Ober, Semrock, Steiner    (10) Mayor-Robert Schwab, Deputy City Clerk-Darlene Sarginson, Treasurer Raymond Rhoads, Attorney-Hebron

### Approval of Previous Minutes-

Alderman Hudson made a motion to approve previous minutes, seconded by Alderman Direso. *Motion passed unanimously!*

### Correspondence

### Elks – Flag Day June 14th 2008

Alderman Ober made a motion to allow the Elks to have a ceremony on June 14th 2008 on the City Square. Alderman Mitchell made a second. *Motion passed unanimously!*

### Good Samaritan Ministries

*Dear Members of Carlinville City Council,*

*The Good Samaritans Ministries (food pantry) have been invited by Carlinville National Bank to host an ice cream social on the night of their June 26 band concert on the Square. This will be a fund-raising opportunity for our food pantry as it was last year, with a free-will offering being collected.*
*Of there are special procedures or requirements that you require, please let us know. I hope that you will favorably review this request at your June Council meeting.*
*Thank you!*
*Sincerely,*
*Donna Eiffert*

Alderman Ober made a motion to approve this, seconded by Alderman Semrock. *Motion passed unanimously!*

### Old Business

### Zoning Ordinance 1st Reading

The council decided to leave the changes to the Zoning Ordinance on 1st Reading. *No action was taken!*



DEFENDANT'S
EXHIBIT
B

**Bluff Speed Limit Ordinance 1st Reading**
Attorney Hebron advised the council to keep the ordinance on 1st Reading. *No action taken!*

**New Business**

Amended Budget 08-09

Alderman Semrock stated that the finance committee discussed the changes at the finance meeting and did not recommend changes at this time. *No action was taken!*

**Public Works**

No Business to discuss

**Zoning**

Dick McClain – The council decided to table the matter and investigate tax on property if any at all. Alderman Malin made a motion to approve, seconded by Alderman Hudson. *Motion passed! Steiner voted nay.*

7:18 p.m.
Alderman Malin made a motion to go into executive session, seconded by Alderman Ober. *Motion passed unanimously!*

Reconvened 9:01.

ADJOURNMENT 9:03 P.M.

Alderman Malin made a motion to adjourn, seconded by Alderman Brockmeier.

MAYOR

DEPUTY CITY CLERK

## CERTIFICATION

I, _____DENA    BOSTON_____, Deputy City Clerk of the City of

Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of the

minutes of the open meeting of the City Council of the City of Carlinville, Illinois on

_____JUNE    2_____, 2008.

*Dena Boston*

SUBSCRIBED    and    SWORN    to    before    me    this    21st    day    of
_____July_____, 2008.

_____
Notary Public

OFFICIAL SEAL
TERESA D. SARGINSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3-28-11

E-FILED
Friday, 25 July, 2008 02:35:34 PM
Clerk, U.S. District Court, ILCD

Special City Council Meeting
June 5, 2008

10:30 A.M.

Attendance: R. Albertine, E. Brockmeier, J. Direso, L. Hudson, J. Malin, B. Mitchell,
R. Ober, N. Semrock, D. Steiner, Mayor Robert Schwab, City-Treas. Raymond Rhoads,
City Attorney Will Hebron and Deputy City Clerk Darlene Sarginson

Mayor Schwab opened the meeting with the Pledge of Allegiance and then announced to
the public that the Council lost a member. He announced that Don Daugherty had passed
on and then read a Proclamation to the family of Don Daugherty. He announced that the
flags will fly at half-mast till Monday morning June 9, 2008. He also asked the council
and public to have a moment of silence.

After roll call Mayor Schwab announced to the council that the only thing on the agenda
was Old Business announcing Executive Session concerning Litigation.  Schwab asked
the Council if they had anything to discuss before dismissing to Executive Session.
Mayor then asked the audience if they have anything to discuss. Doc Ron Rathke asked
the council to please make the citizens aware of what the proposed settlement would be
before any vote or decisions are finalized. He also stated that rumors were on the streets
of Carlinville.

## OLD BUSINESS – LITIGATION

10:38 A.M.

Alderman Malin made a motion to dismiss into Executive Session, seconded by
Alderman Ober. ***Motion passed unanimously!***

## RECONVENED- 12:46 P.M.

Attorney Hebron informed the public that our council had been in discussion concerning
litigation with Southern Baptist Church and at this point he advised the Council to
entertain a motion to approve a settlement agreement in principal between the City and
the Southern Baptist Church with the final details to be worked out among the Attorneys
of the parties. He stated the Settlement Agreement would provide for the passing of a
"Special Use Ordinance" to permit the church the use of the property at 1030 West Main
St. from Wal-Mart to use for religious purposes and related purposes. This Settlement
requires the City's insurance carrier to pay the church $175,000.00. He also stated the fee
includes the Church's attorney fees and alleged damages. Hebron announced the lawsuit


DEFENDANT'S
EXHIBIT
"C"

had been filed in the Federal Court and the State Court would be dismissed. The Federal Court will retain jurisdiction to enforce the settlement agreement for a period of four years. He also stated that the Settlement Agreement included the provision that the City denies any wrong doing or liability of any City Official or Employers or other agents. Hebron asked if anyone in the council would make a motion to agree with the Settlement Agreement. Alderman Malin made a motion to move on this, seconded by Alderwoman Hudson. Mayor Schwab stated a yes vote is to settle, a nay vote was not to settle. *Voting Aye, Albertine, Brockmeier, Hudson, Malin and Semrock. Voting Nay, Direso, Mitchell, Ober and Steiner.*

**Mayor Schwab stated the vote was 5-4 and that he would Veto this because he believed it was not for the best interest of the community. He stated it could be over ridden at the June 16th council meeting by a two thirds vote.**

Adjournment 12:50 p.m.

Alderman Semrock made a motion to adjourn, seconded by Alderman Ober. *Motion passed unanimously!*

Mayor

Deputy City Clerk

## CERTIFICATION

I, _____DENA_____BOSTON_____, Deputy City Clerk of the City of

Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of the

minutes of the open meeting of the City Council of the City of Carlinville, Illinois on

_____JUNE___5_____, 2008.

_Dena Boston_

SUBSCRIBED and SWORN to before me this 21st day of

_July_____, 2008.

_____
Notary Public

OFFICIAL SEAL
TERESA D. SARGINSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3-28-11

E-FILED
Friday, 25 July, 2008 02:36:26 PM
Clerk, U.S. District Court, ILCD

JUL 23 2008

## CERTIFICATION

I, ___DENA   BOSTON___, Deputy City Clerk of the City of

Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of the

Veto dated June 5, 2008 and delivered to the City Council of the City of Carlinville,

Illinois on June 5, 2008.

*Dena Boston*

SUBSCRIBED   and   SWORN   to   before   me   this   21ˢᵗ   day   of

*July*_____, 2008.

*Notary Public*

```
OFFICIAL SEAL
TERESA D. SARGINSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3-28-11
```


DEFENDANT'S
EXHIBIT
"D"

To city of Carlinville .                    June 5, 2008

I veto this because it is not in
the best use of the community!
It can be over-ridden at the June 16th
city council meeting by a 2/3 vote.


                              Mayor
                              Robert Schwab

E-FILED
Friday, 25 July, 2008  02:36:56 PM
Clerk, U.S. District Court, ILCD

## CERTIFICATION

I, _DENA    BOSTON_ , Deputy City Clerk of the City of

Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of the

Veto dated June 16, 2008 and delivered to the City Council of the City of Carlinville,

Illinois on June 16, 2008.

_Dena Boston_

SUBSCRIBED and SWORN to before me this _21st_ day of
_July_ , 2008.

_Tena Olung_
Notary Public

OFFICIAL SEAL
TERESA D. SARGINSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3-28-11



DEFENDANT'S
EXHIBIT
"E"

TO: CARLINVILLE CITY COUNCIL

DATE: _6/16/08_

## **VETO**

I, ROBERT SCHWAB, Mayor of the City of Carlinville, hereby veto the Motion passed by the Carlinville City Council on June 5, 2008, which is attached hereto as "Exhibit 1", and made a part hereof, and which approved the Release and Settlement Agreement between the City of Carlinville and the Carlinville Southern Baptist Church, providing for a special use ordinance to said Church to use the property covered by the agreement for church and related purposes, and requiring the City's insurance carrier to pay said church $175,000.00, which includes the church's attorney's fees and alleged damages.

I veto this Motion because it is not in the best interest of the community. This veto can be over-ridden at the June 16, 2008 City Council by a 2/3 vote.

_Robert Schwab_
MAYOR

Special City Council Meeting
June 5, 2008

10:30 A.M.

Attendance: R. Albertine, E. Brockmeier, J. Direso, L. Hudson, J. Malin, B. Mitchell, R. Ober, N. Semrock, D. Steiner, Mayor Robert Schwab, City-Treas. Raymond Rhoads, City Attorney Will Hebron and Deputy City Clerk Darlene Sarginson

Mayor Schwab opened the meeting with the pledge of leagence and then announced to the public that the Council lost a member. He announced that Don Daugherty had passed on and then read a Proclamation to the family of Don Daugherty. He announced that the flags will fly at half-mast till Monday morning June 9, 2008. He also asked the council and public to have a moment of silence.

After roll call Mayor Schwab announced to the council that the only thing on the agenda was Old Business announcing Executive Session concerning Litigation. Schwab asked the Council if they had anything to discuss before dismissing to Executive Session. Mayor then asked the audience if they have anything to discuss. Doc Ron Rathke asked the council to please make the citizens aware of what the proposed settlement would be before any vote or decisions are finalized. He also stated that rumors were on the streets of Carlinville.

## OLD BUSINESS – LITIGATION

10:38 A.M.

Alderman Malin made a motion to dismiss into Executive Session, seconded by Alderman Ober. *Motion passed unanimously!*

## RECONVENED- 12:46 P.M.

Attorney Hebron informed the public that our council had been in discussion concerning litigation with Southern Baptist Church and at this point he advised the Council to entertain a motion to approve a settlement agreement in principal between the City and the Southern Baptist Church with the final details to be worked out among the Attorneys of the parties. He stated the Settlement Agreement would provide for the passing of a "Special Use Ordinance" to permit the church the use of the property at 1030 West Main St. from Wal-Mart to use for religious purposes and related purposes. This Settlement requires the City's insurance carrier to pay the church $175,000.00. He also stated the fee includes the Church's attorney fees and alleged damages. Hebron announced the lawsuit

EXHIBIT   1

had been filed in the Federal Court and the State Court would be dismissed. The Federal Court will retain jurisdiction to enforce the settlement agreement for a period of four years. He also stated that the Settlement Agreement included the provision that the City denies any wrong doing or liability of any City Official or Employers or other agents. Hebron asked if anyone in the council would make a motion to agree with the Settlement Agreement. Alderman Malin made a motion to move on this, seconded by Alderwoman Hudson. Mayor Schwab stated a yes vote is to settle, a nay vote was not to settle. *Voting Aye, Albertine, Brockmeier, Hudson, Malin and Semrock. Voting Nay, Direso, Mitchell, Ober and Steiner.*

**Mayor Schwab stated the vote was 5-4 and that he would Veto this because he believed it was not for the best interest of the community. He stated it could be over ridden at the June 16th council meeting by a two thirds vote.**

Adjournment 12:50 p.m.

Alderman Semrock made a motion to adjourn, seconded by Alderman Ober. *Motion passed unanimously!*

_____
Mayor

_____
Deputy City Clerk

ExHIBIT    I
(CONTINUED)

STATE OF ILLINOIS   )

MACOUPIN COUNTY   )

June 16, 2008   **E-FILED**
Friday, 25 July, 2008   02:37:34 PM
Clerk, U.S. District Court, ILCD
JUL 2 3 2008

## CITY COUNCIL MEETING

**PRESENT:** Alderman Albertine, Alderman Brockmeier, Alderman Steiner, Alderman Malin, Alderman Direso, Alderman Ober, Alderman Mitchell, Alderman Semrock, Alderman Hudson, Mayor Robert Schwab, Treasurer Raymond Rhoads, City Attorney Will Hebron, and Chief Deputy City Clerk Dena Boston

Mayor Schwab stated that due to the death of our friend Don Daugherty, there is an opening for an alderman in Ward 2. He then stated that if anyone is interested in the position they need to submit a brief letter of interest to City Hall.

## MINUTES

Alderman Hudson pointed out that the Pledge of Allegiance was misspelled and should be capitalized.

*Alderman Ober made a motion to accept the minutes with said corrections seconded by Alderman Semrock. MOTION CARRIED UNANIMOUSLY.*

## COMMITTEE REPORTS

Dena explained to the council that the reports look different due to the change of the software system.

*Alderman Malin made a motion to approve the Clerk's Report, Treasurer's Report, Fire Report, and Police Report as presented seconded by Alderman Direso. MOTION CARRIED UNANIMOUSLY.*

## BILLS

*Alderman Ober made a motion to approve the bills as presented when said money is available seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

## CORRESPONDENCE

### Rotary Club Ice Cream Social

Dear City Council,

May the Rotary Club have permission to hold their annual ice cream social along with the sidewalk sales on Friday, July 25th?

Thank you,
Susan Millard



DEFENDANT'S EXHIBIT
"E"

*Alderman Brockmeier made a motion to allow the Rotary Club to hold their annual ice cream social on Friday, July 25th seconded by Alderman Ober. MOTION CARRIED UNANIMOUSLY.*

## Gary Sanson Retirement Letter

Dear Chief Haley, Mayor Schwab, and City Council Members,

I am writing to inform you that I am retiring from my full-time position as Detective with the Carlinville Police Department, effective July 6, 2008.

The department has been my professional home for more than twenty years and I will miss my investigative duties.    I am immensely appreciative of the opportunities, experiences, and knowledge my career with the city has provided me.    It has been a privilege to serve our community.

I look forward to starting the next phase of my life and I would like to request that I stay as a part-time police officer with the Carlinville Police Department.

Sincerely,
Gary Sanson

*Alderman Direso made a motion to accept Gary Sanson's resignation letter and allow Gary to stay on as a part-time police officer seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

## OLD BUSINESS

## 2ND Reading on Zoning Ordinance

*Alderman Hudson made a motion to approve the 2nd reading on the zoning ordinance as presented seconded by Alderman Steiner. MOTION CARRIED UNANIMOUSLY.*

## 2ND Reading on Bluff's Speed Zone Ordinance

Will explained that he added Coyote Drive to the ordinance.  He then stated that all of the roads in the Bluffs Subdivision have a speed limit of 25 miles per hour.
*Alderman Mitchell made a motion to approve the 2nd reading of the ordinance reducing the speed limit to 25 miles per hour in the Bluffs Subdivision seconded by Alderman Ober.  MOTION CARRIED UNANIMOUSLY.*

## Mayor' Veto

Mayor Schwab gave a statement that he still upholds his decision on his veto to enter into an agreement with the Carlinville Southern Baptist Church.

Alderman Hudson made several statements on why she thinks the city should override the veto and enter into the agreement with the church.

Alderman Semrock expressed his concern for the financial side of the situation.

*Alderman Semrock made a motion to override the Mayor's veto concerning the motion to enter into an agreement with the Southern Baptist Church seconded by Alderman Hudson. Voting Aye: Alderman Sonny Albertine, Alderman Elaine Brockmeier, Alderman Lea Hudson, Alderman John Malin, and Alderman Norman Semrock Voting Nay: Alderman Joe Direso, Alderman Brian Mitchell, Alderman Randy Ober, and Alderman David Steiner*

*With a 5 to 4 vote, the veto sustained.*

## NEW BUSINESS

### Lake Lease Renewal

*Alderman Direso made a motion to approve a lake lease transfer from Scott Burns to Quentin and Brandy Drew seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

### Save the Animals Golf Classic

Please join us for the annual Macoupin County Animal Control and Adoption Center Golf Classic at Timber Lakes Golf Course in Staunton on Friday, July 28, 2008.

This special event will benefit the animals of Macoupin County by helping fund a new animal shelter and educational programs for the public on the proper care of their animals. The Macoupin County Animal Control and Adoption Center is striving to place animals in loving environments. Your support of the outing demonstrates your commitment to the humane care of the animals in this county.

Sponsorships by local businesses are being sought. Door prizes, gift certificates or other prizes would be greatly appreciated. Macoupin County Animal Control and Adoption Center is 501c3 agency, so any donation is tax deductible. Businesses interested in supporting this fund-raising effort should complete and return the attached form to:
Buzie Bertagnolli

We thank you in advance for your cooperation and support. Please do not hesitate to call me at 217-854-4024 should you have any questions.

Sincerely,
Buzie Bertagnolli

*Alderman Ober made a motion to turn this request over to the finance committee seconded by Alderman Mitchell. Voting Aye: Aldermen Sonny Albertine, Elaine Brockmeier, Joe Direso, Lea Hudson, Brian Mitchell,Randy Ober, and Davide Steiner Voting Nay: Aldermen John Malin and Norman Semrock*

### 911 Equipment Upgrade

Alderman Direso presented a spreadsheet with the cost of reprogramming the 911 equipment. He explained that there were no grants available.

*Alderman Direso made a motion to accept the bid from Ron Whiteside in the amount of $12,425.00 to purchase the equipment and do the 911 upgrade seconded by Alderman Ober. MOTION CARRIED UNANIMOUSLY.*

### Public Works

Mary Beth informed the committee that the public works committee is in the process of looking over the applications for the public works position, and that they will have a recommendation for a new employee at the next council meeting.

### Zoning

Zoning Administrator, Beth Toon, presented five zoning variances as follows:

**Bernard Hoelting** building a garage at 303 North Broad.

*Alderman Semrock made a motion to approve the zoning variance as presented seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

**Ronald Convery** building a garage at 414 South Broad.

*Alderman Mitchell made a motion to approve the zoning variance as presented seconded by Alderman Albertine. MOTION CARRIED UNANIMOUSLY.*

**John Koster** adding on to 222 ½ West 2nd South.

*Alderman Albertine made a motion to approve the zoning variance as presented seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

**Daniel and Beth Pruitt** installing a pool and deck at 318 West 2nd South.

*Alderman Semrock made a motion to approve the zoning variance as presented seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

**Chance Newingham** building a garage and a fence at 707 West Cherry.

*Alderman Malin made a motion to refer to this zoning variance at the next council meeting seconded by Alderman Ober. MOTION CARRIED UNANIMOUSLY.*

**Mark Parker** building a deck and fence at 128 West Main.

*Alderman Albertine made a motion to approve the zoning variance as presented seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

### EXECUTIVE SESSION

*Mayor Schwab entertained a motion to enter into executive session at 8:12 p.m. for personnel issues. Alderman Ober made a motion to enter into executive session seconded by Alderman Direso. MOTION CARRIED UNANIMOUSLY.*

The council reconvened from executive session at 8:26 p.m.

## Part-time Dispatcher

*Alderman Direso made a motion to advertise for a part-time police dispatcher seconded by Alderman Mitchell. MOTION CARRIED UNANIMOUSLY.*

## ADJOURNMENT

*Alderman Brockmeier made a motion to adjourn at 8:30 p.m. seconded by Alderman Ober. MOTION CARRIED UNANIMOUSLY.*

Mayor Robert Schwab

Attested:

Deputy City Clerk, Dena Boston

# CERTIFICATION

I,_____DENA  BOSTON_____, Deputy City Clerk of the City of
Carlinville, Illinois, hereby certify that the foregoing is a true and correct copy of the
minutes of the open meeting of the City Council of the City of Carlinville, Illinois on
___JUNE___ 16___, 2008.

_Dena Boston_

SUBSCRIBED and SWORN to before me this ___21st___ day of
_July_____, 2008.

_Cren O. Jay_____
Notary Public