## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CARLINVILLE SOUTHERN BAPTIST CHURCH, | ) | |
| Plaintiff, | ) | Case No. 08-CV-3074 |
| v. | ) | |
| | ) | |
| CITY OF CARLINVILLE, ILLINOIS, CITY OF CARLINVILLE PLANNING/ZONING COMMISSION, | ) | |
| Defendants. | ) | |

### Release and Settlement Agreement and Order of Dismissal

Upon stipulation and consent of the parties, by and through their respective attorneys, the parties to the above captioned case freely and voluntarily enter into this Release & Settlement Agreement ("Agreement") as follows:

Plaintiff, Carlinville Southern Baptist Church, an Illinois ecclesiastical corporation ("Church"), is the owner of a parcel of land ("subject property") located at 1030 West Main Street, Carlinville, Illinois, more particularly described in *Exhibit 1 (legal description of subject property)* attached hereto and made a part hereof.

Defendant, City of Carlinville ("City") is a municipal corporation, organized and existing under the laws of the State of Illinois, and Defendant, Carlinville Planning and Zoning Commission ("Planning Commission"), is a commission established pursuant to the laws of the State of Illinois ("Zoning Act").

The parties now wish to settle this lawsuit in accordance with the terms and conditions of this Agreement, in order to avoid further costs and expenses and the uncertainty of a trial and to resolve this dispute without any admission of liability.  The parties agree that the operative provisions of this Agreement are promises made by each of them to the extent that these provisions are applicable to their respective actions.

**NOW, THEREFORE,** this Agreement being presented to the Court pursuant to stipulation of the parties, and the Court having determined that this proposed Agreement is reasonable and just and being otherwise fully advised in the premises, **IT IS HEREBY STIPULATED, ORDERED AND AGREED THAT:**

### Section 1 – Approvals

1.1    Special Use Ordinance:  The subject property has been and continues to be zoned and classified in the C-1 Commercial District Zoning Classification.  The City will pass, as soon as permitted by law (and with every intention of passing it at the meeting to be held on December 15, 2008), the "Special Use Ordinance Concerning Carlinville Southern", whereby the

Church is granted a Special Use Permit to immediately develop, construct, maintain, and use the subject property as a Church, a playground, and related uses on the Property in accordance with the terms of this Agreement. The approved plans are attached as *Exhibit 2*. The special use ordinance is attached as *Exhibit 3* to this agreement.

A.    Irrespective of the zoning designation of the subject property (which will not be changed from its present commercial designation), the subject property may be used in accordance with the terms of this Agreement, and the subject property and the structures thereon may continue to be used in perpetuity as a religious institution, subject to, and in accordance with, the terms of this Agreement.

B.    No amendments to or modifications of the text or map of the City Zoning Ordinance or any applicable regulatory ordinances made or adopted after the date hereof:

(i)    shall prevent the subject property from being used in accordance with the terms of this Agreement; or

(ii)   shall prevent the construction of any structures or other improvements shown in *Exhibit 2* and in accordance with this Agreement.

C.    If the Church ceases to operate or exist at the subject property location as a religious institution (the term "ceases to exist" does not include a merger, change of name or change of denomination or substantive damage to the facility such as fire, tornado, or other act of God), then the special use shall no longer apply to the subject property, and the special use ordinance and permit are null and void. If the Church ceases to exist, the right of first refusal provision of this agreement (paragraph 2.3) shall be triggered. If at any time in the future, the subject property is sold, even to another church, then the special use ordinance and permit are immediately null and void.

1.2    Construction near public property. A certificate of insurance is necessary for any work to be done near or adjacent to any public property listing the City as an additional insured. The City will be held harmless and is to be indemnified for any claims of property damage or bodily injury related to this work.

1.3    Applicable Laws.

A. If the Church ceases to operate or exist at the subject property location as a religious institution (the term "ceases to exist" does not include a merger, change of name or change of denomination or substantive damage to the facility such as fire, tornado, or other act of God), then the special use shall no longer apply to the subject property, and the special use ordinance and permit are null and void. If the Church ceases to exist, the right of first refusal provision of this agreement shall be triggered. If at any time in the future, the subject property is sold, even to

2

another church, then the special use ordinance and permit are immediately null and void.

B.  In reviewing the Approved Plans (if not already approved as of the date hereof) and any applications for permits for the construction or use of any building or other improvements covered in the Approved Plans shown on the Site Plan, the City shall apply and consider only the requirements of the Zoning Ordinance, regulatory ordinances, engineering standards, and the approved special use permit approved for this use which are in effect and applicable as of the date hereof.

1.4  <u>Damages and Attorney Fees.</u>  The City of Carlinville's insurers will pay the Church $125,000, made payable to Tomkiw Dalton, plc, comprising the total amount of alleged damages, costs and attorney fees. The City of Carlinville's insurers will pay the City of Carlinville $50,000 for the City to use for economic development purposes within 30 days of the date this agreement is formally approved by the parties.

## Section 2 – Conditions

2.1  <u>Applicability.</u>  The conditions listed in this Agreement shall apply to the approval of the special use permit and to the Approved Plans. In the event of conflict between this Agreement and any current or future zoning ordinance, the terms of this Agreement shall control.

2.2  <u>Parking Areas.</u>  Parking shall only be permitted to occur within the parking spaces already provided for at the subject location and depicted in *Exhibit 2*. The Church will comply with City's abandoned vehicle ordinance, which is Ordinance 24-7-1 through 24-7-14, attached as *Exhibit 4*. This ordinance, however, does not apply to any Church owned or operated vehicles that are operable, licensed, and/or legally registered including, but not limited to the Church bus. The ordinance is applicable to inoperable, unlicensed, or unregistered vehicles, even if owned by the Church.

2.3  <u>Right of First Refusal.</u>  Should the Church desire to sell the subject property, and receives an offer from a party other than the City, the Church shall notify the City of the offer and grant it the right of first refusal to purchase the subject property.  The right of first refusal is also triggered if the Church sells any part of the subject property. This right of first refusal is of unlimited duration. After notifying the City of the purchase offer, there will be a 60-day (sixty) period for the appraisal process referenced below to be completed.  Not longer than 60 (sixty) days after the appraisal process is completed, the City will notify the Church whether or not it intends to purchase the subject property.  After notifying the Church of its intention to purchase the property, the City will have an additional 60 (sixty) days to arrange financing and the closing on the sale of the subject property. The closing shall take place not longer than 180 days after the Church first notifies the City regarding the third party purchase offer.  The purchase price for the City to purchase the subject property shall be based upon either the average of three appraisals, one appraiser chosen by the Church, one appraiser chosen by the City, and one appraiser chosen by an agreement between the other two appraisers, or an agreement between the City and the Church. If the City meets the right of first refusal and agrees to purchase the subject property,

3

then the Church is obligated to sell the property to the City, and the City is obligated the buy the property. If the City does contract to purchase the subject property at an agreed upon price, the City has the absolute right to assign the sales contract to any individual or entity of its own choosing.

2.4 <u>Fire Inspection.</u> The Church will comply with the fire inspection ordinance, 6-4-2 Supp No. &, 02-01-02, attached as *Exhibit 5* herein.

2.5 <u>Handicap Compliance.</u> The Church will comply with all federal and state rules and regulations regarding handicapped and disabled persons including, but not limited to, parking spaces and wheelchair ramps.

2.6 <u>Sign Ordinances.</u> The Church shall comply with the City Sign Ordinance, Article 7, sections 40-7-1 through 40-7-17, attached as *Exhibit 6* herein.

2.7 <u>Right of Way.</u> At the Church's sole discretion, it may allow other businesses and individuals to use its parking lot. Within 30 days of the date the agreement is formally approved by the parties, the Church shall grant to the City a perpetual easement (to be recorded with Macoupin County) and right of way 50 feet in even width for public roadway and utility purposes along the entire western edge of the Church's property, from Route 108 north to where the Church's western boundary turns eastward towards the building (**approximately 548.5 feet in length, with the knowledge that the approximate first 27 feet of the easement are not under the Church's control, but fall within IDOT jurisdiction**). The easement is attached as *Exhibit 7.* The City shall provide the Church with six months notice prior to utilizing the easement for utility and/or roadway purposes.

2.8 <u>Future Expansion.</u> This Agreement **does not prohibit** the Church from changing, modifying, or altering in any way the current façade of the existing building on the subject property, as long as any alteration of the façade of the building is consistent with all applicable and presently exiting ordinances. Should the Church desire to expand on properties adjacent to it that it currently does not own, or in any way expand the current physical structure of the building currently located on the subject property, or construct any new buildings on the subject property, the Church will comply with all relevant and applicable ordinance requirements and the special use ordinance currently in place, or enacted subsequent to the date of this Agreement, regarding the same. The Church is not precluded from seeking a variance. In reviewing plans for any physical expansion of the Church, the City shall apply and consider the zoning, engineering and applicable construction standards in effect at the time of the review for the future plans.

2.9 <u>Taxes.</u> If the Church opens a coffee shop, bookstore, radio station, or any type of business on the Church Property and claims that such a business is related to the Church's religious operations, then to the extent permitted under state law, sales tax revenue from this business operation will be charged by any and all applicable governmental agencies.

2.10 <u>Contact Person.</u> At the request of the City, the Church designates its secretary as the contact person with respect to any questions that arise under the terms of this Settlement Agreement.

4

2.11   State Court Action.  The City will dismiss the pending state court lawsuit, captioned City of Carlinville vs. Carlinville Southern Baptist Church, pending in the Macoupin County Circuit Court (2008 CH 63), with prejudice and without costs to either party upon the entry of this Order. The proposed order of dismissal is attached as *Exhibit 8.*

2.12   Property Tax Exemption.  The City shall withdraw its protest with respect to the property tax exemption and shall not object to the property tax exemption for the Church for 1030 West Main Street, Carlinville, Illinois, since its purchase date.  A letter from the City withdrawing the property tax exemption is attached as *Exhibit 9* hereto.

### Section 3 – Mutual Release

The Church and the City, each for itself and its respective successors and assigns, releases and forever discharges the other and its respective affiliates, successors, predecessors, assigns, officers, directors, trustees, transferees, employees, independent contractors, insurers and attorneys of and from any and all claims, demands, actions, causes of action, suits, debts, judgments, executions, damages and rights of whatever nature in law, equity or otherwise which exist until the date this agreement is formally approved by the parties by reason of any acts, events or facts existing on the date of this Settlement Agreement, whether known or unknown on that date, including by way of illustration but without limitation any matter arising out of or relating to the Lawsuit, the Church's application for a rezoning of the subject property, and/or any claims or causes of action arising under the Federal and State Constitutions or any federal or state statutes, rules or regulations.  This Mutual Release shall not bar claims brought to enforce, interpret or otherwise obtain legal or equitable relief under or pursuant to this Settlement Agreement.

### Section 4 – Additional Provisions

4.1   Good Faith.  The parties and their respective successors and assigns shall treat and cooperate with one another in good faith and shall neither take any action which is contrary to or interferes with the spirit of this Settlement Agreement, nor omit any action which is necessary or convenient to or consistent with the spirit and intent of this Settlement Agreement.

4.2   Additional Documents.  The parties shall execute any and all documents and/or enter into such agreements as are necessary or convenient to carry out the intent of this Settlement Agreement.

4.3   Amendments.  The terms of this Settlement Agreement may be amended, changed or modified but only by written agreement executed by the parties hereto and approved and ordered by this Court.

4.4   Authority.  By their execution of this Agreement, the Church and the City each warrant that they have the authority to execute this Agreement and bind their respective entities to its terms and conditions.  Subject to the terms of this Agreement mentioned above, this Agreement shall be binding upon and inure to the benefit of the Church and the City and their

5

respective successors and assigns, including without limitation successors in interest in the subject property and subsequent purchasers of the subject property.

    4.5    <u>Jurisdiction.</u>  The parties hereby agree that this case has been settled and that all issues and controversies have been resolved to their mutual satisfaction. The parties request the Court to retain jurisdiction to enforce the terms of their Settlement Agreement under the authority of *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 381-82 (1994). By consent of the parties, this Court retains jurisdiction to assure compliance with the terms of this Agreement and to grant whatever legal and/or equitable relief or remedies that the Court deems appropriate. The parties expressly waive their rights under Fed. R. Civ. Pro. 65(d). This case is dismissed without prejudice with leave to reinstate on or before December 1, 2011 for the purpose of enforcing the settlement. This Agreed Order of Dismissal is entered without prejudice in order to allow the Court to enforce the Settlement Agreement. The parties are barred from relitigating any claims raised in this litigation or any claims released by means of the Settlement Agreement. In the event a motion to reinstate or motion to enforce settlement is not filed on or before December 1, 2011, the Court shall relinquish jurisdiction and the case shall be deemed dismissed with prejudice without further order of the Court. Should court intervention become necessary to enforce the terms of this Agreement, each party shall bear its own attorney's fees and costs.

    4.6    <u>Agreement.</u>  This Agreement constitutes the entire agreement between the City and the Church.

    4.7    <u>Counterparts.</u>  This Agreement may be executed via facsimile in one or more counterparts, all of which together shall constitute the agreement of the parties.

    4.8    <u>Check.</u>  The City's insurer shall deliver a settlement check to the law firm of Tomkiw Dalton, plc and made payable to Tomkiw Dalton, plc on or before December 15, 2008.

    4.9    <u>Dual Drafting.</u>  The parties to this Agreement confirm that it was drafted jointly.

U.S. DISTRICT COURT JUDGE

s/Jeanne E. Scott            12-15-08
Hon. Jeanne Scott, United States District Court

6

THE UNDERSIGNED REPRESENT THAT THEY HAVE AUTHORITY TO ENTER INTO
THIS AGREEMENT, HAVE READ AND THEY UNDERSTAND THE TERMS OF THIS
SETTLEMENT AGREEMENT, AND THAT THEY HAVE VOLUNTARILY EXECUTED
THE SAME.

In witness whereof, we have hereto set our hands to this Agreement.

Oakville Southern Baptist Church:                   City of Carlinville:

/s/                                                 /s/                        12/12/08
By:  Timothy Rhodes                                 By:  Robert Schwab
Its: Senior Pastor                                  Its: Mayor

/s/                                                 /s/                     12/11/08
By:  David F. Dalton                                By:  Elmira N. Kovachius
Its: Attorney for Plaintiff                         Its: Attorney for Defendant

"OFFICIAL SEAL"
REBECCA S. GASCOIGNE
Notary Public, State of Illinois
My Commission Expires March 28, 2011

## LEGAL DESCRIPTION

Part of Lots 9 and 10 in Welton's and Others Subdivision of part of the West Half of the Northeast Quarter of Section 29, and parts of Lots 3 and 4 in Welton's and Others Subdivision of part of the West Half of the Southeast Quarter of Section 29, all in Township 10 North, Range 7 West of the Third Principal Meridian, Macoupin County, Illinois, described more particularly as follows:

Starting at the Southeast corner of said Lot 3; thence with the East line thereof, North 161.00 feet to the point of beginning; thence leaving said East line South 89 degrees 27 minutes West 279.63 feet; thence South 161.00 feet to the South line of said Lot 3; thence with said South line and the South line of said Lot 4 South 89 degrees 27 minutes West 130.37 feet; thence leaving South line of said Lot 4 North 548.50 feet; thence North 89 degrees 27 minutes East 80.00 feet; thence North 122.50 feet; thence South 89 degrees 27 minutes West 30.00 feet; thence North 171.00 feet thence North 89 degrees 27 minutes East 360.00 feet to the East line of said Lot 10; thence with said East line and the East line of said Lot 3 South 681.00 feet to the point of beginning.

EXCEPTING the following described real estate:

Part of Lot 3 in Welton's and Others Subdivision of part of the West Half of the Southeast Quarter of Section 29, Township 10 North, Range 7 West of the Third Principal Meridian, Macoupin County, Illinois, described as follows:

Beginning at the Southeast corner of a tract of land recorded in Book 446, Page 272 in the Macoupin County, Illinois, Recorder of Deeds Office, said point being on the East line of Lot 3 in Welton's and Others Subdivision, also being the West right-of-way line of McCasland Street; thence North 00 degrees 11 minutes 19 seconds West along the East line of Lot 3 in Welton's and Others Subdivision, also being the West right-of-way line of McCasland Street 121.837 meters (399.72 feet); thence South 05 degrees 01 minutes 42 seconds West 24.652 meters (80.88 feet); thence South 00 degrees 11 minutes 19 seconds East 97.309 meters (319.25 feet) to the Grantor's South Property line; thence North 89 degrees 13 minutes 49 seconds East 2.239 meters (7.35 feet) to the point of beginning. Situated in Macoupin County, Illinois.

Exhibit No. 1



Exhibit No. 2



Master Plan

Scale: 1/16" = 1'-0"

Carlinville Southern Baptist Church

Carlinville, IL

11-19-07

**BROWN**
CHURCH DEVELOPMENT GROUP

## SPECIAL USE ORDINANCE CONCERNING
## CARLINVILLE SOUTHERN BAPTIST CHURCH

WHEREAS, the Carlinville Southern Baptist Church (hereinafter referred to as Church) has acquired the real estate described in "Exhibit 1" of the Release and Settlement Agreement and Order of Dismissal (hereinafter referred to as Agreement), which is attached hereto and made a part hereof;

WHEREAS, said real estate is zoned C-1, Neighborhood Commercial;

WHEREAS, the Church wishes to use said real estate as a church, playground and related uses pursuant to the terms of the Agreement;

WHEREAS, the Church and the City of Carlinville are engaged in litigation concerning the use of said real estate;

WHEREAS, the Church and the City of Carlinville wish to resolve the litigation pursuant to the terms of the Agreement, and it is in the best interest of the City of Carlinville to do so.

Be It Ordained by the City Council of the City of Carlinville, Illinois as follows:

SECTION 1:    The aforesaid real estate shall continue to be zoned C-1, Neighborhood Commercial.

SECTION 2:  The Church is hereby granted a special use to use the aforesaid real estate as a church, playground and related uses in accordance with the terms and conditions of the aforesaid Agreement.

SECTION 3:  This Ordinance shall be effective as soon as permitted by law.

VOTING AYE: _____

_____

VOTING NAY: _____

_____

Passed this _____ day of _____, 2008.

_____
CHIEF DEPUTY CITY CLERK

Approved by the Mayor of the City of Carlinville, Illinois this _____ day of _____, 2008.

_____
MAYOR OF THE CITY OF
CARLINVILLE, ILLINOIS

ATTEST:

_____
CHIEF DEPUTY CITY CLERK

Exhibit No. 3

*Carlinville City Code*                                        Motor Vehicle Code 24-7-1

## ARTICLE VII - ABANDONED VEHICLES

**24-7-1**        DEFINITIONS. For the purpose of this Code, the following words shall have the meanings ascribed to them as follows:

"ABANDONED VEHICLE" shall mean all motor vehicles or other vehicles in a state of disrepair, rendering the vehicle incapable of being driven in its condition; or any motor vehicle or other vehicle that has not been moved or used for seven (7) consecutive days or more and is apparently deserted.

"ANTIQUE VEHICLE" means any motor vehicle or other vehicle twenty-five (25) years of age or older.

"COMPONENT PART" means any part of a vehicle other than a tire having a manufacturer's identification number or an identification number issued by the Secretary of State.

"DERELICT VEHICLE" means any inoperable, unregistered, or discarded motor vehicle, regardless of title, having lost its characteristic as a substantial property and left unattended without justification on the owner's, lienholder's or other legally entitled person's land contrary to the public policy expressed in this Code.

"HIGHWAY" means any street, alley or public way within this municipality.

"REMOVE" means to remove, deface, cover, or destroy.

"VEHICLE" means every device in, upon or by which any person or property is or may be transported or drawn upon a street or highway, whether subject to or exempt from registration, excepting, however, bicycles, snowmobiles and devices used exclusively upon stationary rails or tracks.

**24-7-2**        ABANDONMENT.

(A)        Highway. The abandonment of a motor vehicle or other vehicle or part thereof on any highway in this municipality is unlawful and subject to penalties as set forth herein.

(B)        Private Property. The abandonment of a vehicle or any part thereof on private or public property other than a highway in view of the general public anywhere in this municipality is unlawful, except on property of the owner, or bailee of such abandoned vehicle.

(C)        Owner's Property. A vehicle or any part thereof so abandoned on private property shall be authorized for removal by the police department, after a waiting period of seven (7) days or more, or may be removed immediately if determined to be a hazardous dilapidated motor vehicle under Ch. 65 Sec. 5/11-40-3.1 of the Illinois Compiled Statutes. A violation of this Section is subject to penalties as set forth in Section 1-1-19 of the City Code. (See 625 ILCS Sec. 5/4-201)

**24-7-3**        POSSESSION OF VEHICLE BY OTHER PARTY; TOWING. When an abandoned, lost, stolen or unclaimed motor vehicle or other vehicle comes into the temporary possession or custody of a person in this municipality who is not the owner, lienholder                              or                                        other

*Illinois Codification Services*          **Exhibit No. 4**                    Page        587

## *Carlinville City Code*                Motor Vehicle Code 24-7-3

legally entitled person of the vehicle, such person shall immediately notify the Police Department when the vehicle is within the corporate limits of the municipality. Upon receipt of such notification, the Police Department or designated representative shall authorize a towing service to remove and take possession of the abandoned, lost, stolen or unclaimed motor vehicle or other vehicle. The towing service will safely keep the towed vehicle and its contents, maintain a record of the tow, as set forth in Section 24-7-5, until the vehicle is claimed by the owner, lienholder, or any other person legally entitled to possession thereof or until it is disposed of as provided in this Chapter. (See 625 ILCS Sec. 4/4-202)

24-7-4    REMOVAL OF MOTOR VEHICLES OR OTHER VEHICLES - TOWING OR HAULING AWAY.
(A)    When a vehicle is abandoned or left unattended on a highway in an urban district for ten (10) hours or more, its removal by a towing service may be authorized by the Police Department.
(B)    When an abandoned, unattended, wrecked, burned or partially dismantled vehicle is creating a traffic hazard because of its position in relation to the highway or its physical appearance is causing the impeding of traffic, its immediate removal from the highway or private property adjacent to the highway by a towing service may be authorized by the Police Department.
(C)    When a vehicle removal from either public or private property is authorized by the Police Department, the owner, lienholder or other legally entitled person of the vehicle shall be responsible for all towing costs.
(D)    The remaining provisions of Section 5/4-203 of Chapter 625 of the Illinois Compiled Statutes are hereby adopted by reference and the provisions thereof shall be controlling within the corporate limits of this municipality. (See 625 ILCS Sec. 5/4-203)

24-7-5    POLICE RESPONSIBILITIES. When a vehicle is authorized to be towed away as provided herein, the Police Department shall keep and maintain a record of the vehicle towed, listing by color, year of manufacture, manufacturer's trade name, manufacturer's series name, body style, vehicle identification number and license plate year and number displayed on the vehicle. The record shall also include the date and hour of tow, location towed from, location towed to, reason for towing and the name of the officer authorizing the tow. (See 625 ILCS Sec. 5/4-204)

24-7-6    UNKNOWN OWNER. When the Police Department does not know the identity of the registered owner, lienholder or other legally entitled person, they will cause the motor vehicle registration records of the State of Illinois to be searched                                    by                                    a

*Carlinville City Code*                    Motor Vehicle Code 24-7-6

directed communication to the Secretary of State for the purpose of obtaining the required ownership information.

The Police Department authorizing the impoundment shall cause the stolen motor vehicle files of the Illinois State Police to be searched by a directed communication to the Illinois State Police for stolen or wanted information of the vehicle. The information determined from these record searches shall be used by the Police Department in sending notification by certified mail to the owner, lienholder or legally entitled person advising where the vehicle is held, requesting a disposition to be made and setting forth public sale information. (See 625 ILCS Sec. 5/4-205)

**24-7-7      IDENTIFYING AND TRACING VEHICLE.** When the registered owner, lienholder, or other person legally entitled to the possession of a motor vehicle or other vehicle cannot be identified from the registration files of this State or from the registration files of a foreign state, if applicable, the Police Department shall notify the Illinois State Police for the purpose of identifying the vehicle's owner, lienholder, or other person legally entitled to the possession of the vehicle. The information obtained by the Illinois State Police shall be immediately forwarded to the Police Department having custody of the vehicle for notification purposes as set forth in Section 24-7-6 of this Chapter. (See 625 ILCS Sec. 5/4-206)

**24-7-8      RECLAIMED VEHICLES - EXPENSES.** Any time before a motor vehicle or other vehicle is sold at public sale or disposed of as provided in Section 24-7-9, the owner, lienholder, or other person legally entitled to its possession may reclaim the vehicle by presenting to the Police Department proof of ownership or proof of the right to possession of the vehicle. No vehicle shall be released to the owner, lienholder, or other legally entitled person under this Section until all towing and storage charges have been paid. (See 625 ILCS Sec. 5/4-207)

**24-7-9      DISPOSAL OF UNCLAIMED VEHICLE.** Whenever an abandoned, lost, stolen, or unclaimed motor vehicle or other vehicle seven (7) years of age or newer remains unclaimed by the registered owner, lienholder, or other person legally entitled to its possession for a period of thirty (30) days after notice has been given as provided herein, the Police Department having possession of the vehicle shall cause it to be sold at public auction to a person licensed as an automatic parts recycler, rebuilder or scrap processor under Chapter 5 of Chapter 625 of the Illinois Compiled Statutes. Notice of the time and place of the sale shall be posted in a conspicuous place for at least ten (10) days prior to the sale on the premises where the vehicle has been impounded. At least ten (10) days prior to the sale, the Police Department shall cause a notice of the time and place to be sent by certified

*Carlinville City Code*                    Motor Vehicle Code 24-7-9

mail to the registered owner, lienholder, or other person known by the Police Department or towing service to be legally entitled to the possession of the vehicle. Such notice shall contain a complete description of the vehicle to be sold and what steps must be taken by any legally entitled person to reclaim the vehicle.

In those instances where the certified notification specified herein has been returned by the postal authorities to the Police Department due to the addressee having moved or being unknown at the address obtained from the registration records of this State, the sending of a second certified notice shall not be required.

24-7-10    DISPOSAL OF UNCLAIMED VEHICLES WITHOUT NOTICE.

(A)    New Car. When the identity of the registered owner, lienholder, or other person legally entitled to the possession of an abandoned, lost, or unclaimed vehicle of seven (7) years of age or newer cannot be determined by any means provided for in this Chapter, the vehicle may be sold as provided for in Section 24-7-9 of this Code without notice to any person whose identity cannot be determined.

(B)    Old Car. When an abandoned vehicle of more than seven (7) years of age is impounded as specified by this Code, it shall be kept in custody for a minimum of ten (10) days for the purpose of determining the identity of the registered owner and lienholder and contacting the registered owner and lienholder by the U.S. Mail, public service or in person for a determination of disposition; and an examination of the Illinois State Police stolen motor vehicle files for theft and wanted information. (At the expiration of the ten (10) day period without the benefit of disposition information being received from the registered owner, lienholder or other legally entitled person, the Chief of Police shall authorize the disposal of the vehicle as junk.)

(C)    Antique Vehicle. A vehicle classified as an antique vehicle may, however, be sold to a person desiring to restore it. (See 625 ILCS Sec. 5/4-209)

24-7-11    POLICE RECORD FOR DISPOSED VEHICLE. When a motor vehicle or other vehicle in the custody of the Police Department is reclaimed by the registered owner, lienholder, or other legally entitled person or when the vehicle is sold at public sale or otherwise disposed of as provided in this Chapter, a report of the transaction shall be maintained by the Police Department for a period of one (1) year from the date of the sale or disposal. (See 625 ILCS Sec. 5/4-210)

24-7-12    PUBLIC SALE PROCEEDS. When a vehicle located within the corporate limits of this municipality is authorized to be towed away by the Police Department and disposed of as set forth in this Code, the proceeds of the public sale or disposition, after the deduction of towing, storage and processing charges, shall be deposited in the municipal treasury. (See 625 ILCS Sec. 5/4-211)

*Carlinville City Code*                    Motor Vehicle Code 24-7-13

24-7-13     LIABILITY. A law enforcement officer or agency, towing service owner, operator or employee shall not be held to answer or be liable for damages in any action brought by the registered owner, former registered owner or his legal representative, lienholder, or any other person legally entitled to the possession of a vehicle when the vehicle was processed and sold or disposed of as provided by this Code. (See 625 ILCS Sec. 5/4-213)


24-7-14     PENALTY.
(A)          Any person who violates or aids and abets in the violation of this Article is guilty of a petty offense, and
(B)          shall be fined not less than Twenty-Five Dollars ($25.00) nor more than One Hundred Dollars ($100.00), and
(C)          shall be required by the Court to make a disposition on the abandoned or unclaimed vehicle and pay all towing and storage charges pursuant to this Article. (See 625 ILCS Sec. 5/4-214)

*Carlinville City Code*                    Building Regulations 6-4-1

## ARTICLE IV

### FIRE INSPECTOR

**6-4-1    APPOINTMENT OF FIRE INSPECTOR.** The Mayor, with the approval of the City Council, shall appoint annually a Fire Inspector for the City.

**6-4-2    DUTIES OF FIRE INSPECTOR.** The Fire Inspector shall have the following duties:

(A)    To inspect all businesses as often as may be necessary for the purpose of ascertaining and recommending actions to correct any conditions liable to cause fires, contribute to the spread of fires, to interfere with firefighting operations, and to endanger life or cause any violation of any other ordinance affecting fire safety.

(B)    To provide fire safety information to building owners and/or occupants.

(C)    To ascertain information vital to the Fire Department such as floor plans, water supply, and building construction.

(D)    To provide written reports to the business owners, which said reports shall be placed on file at the Carlinville Fire Department.

**6-4-3    ADVISORY CAPACITY.** The Fire Inspector is to act in an advisory capacity to the City and to property owners. Neither the City, the Fire Department, nor the Fire Inspector shall be liable for any damages to persons or property by reasons of the inspection or re-inspections of building, structures or equipment or the failure to inspect or re-inspect such building, structures, or equipment.

(Ord. No. 1411; 09-20-99)

Exhibit No. 5

# ARTICLE VII

## SIGN CODE

**40-7-1      SIGN PERMIT REQUIRED; FEE.** Except as otherwise provided in the following sections, no outdoor advertising sign, billboard or structure shall be erected, constructed, altered, rebuilt, or relocated except as provided in this Code and until a permit for the sign has been issued by the City upon application therefore submitted in the form the City may prescribe so as to include any information as may be required by it for a complete understanding of the proposed work.   This application shall be accompanied by a fee according to the permit fee schedule included in **Section 40-9-5**.

**40-7-2      EXEMPTIONS.** No person will be required under this Code for the following signs:
     (A)      A wall or window sign not exceeding **six (6) square feet** of display surface.
     (B)      A sign not exceeding **three (3) square feet** of display surface on a residence building stating merely the name and profession of an occupant.
     (C)      A ground sign advertising either the sale or rental of the premises upon which it is maintained when the sign does not exceed **twenty-five (25) square feet** of display surface.
     (D)      Street, warning, and other official or non-advertising signs erected by any government or by others where required by or pursuant to legal authority.
     (E)      The exemptions permitted by this Section shall apply only to the requirement of a permit and shall not be construed as relieving the owner of the sign from responsibility for its erection and maintenance in a good and safe condition.

**40-7-3      EXAMINATION OF PLANS; ISSUANCE.**   The Zoning Administrator, upon the filing of an application for a Temporary Certificate of Zoning Compliance as required by **Section 40-9-4**, shall examine the plans and specifications and other data and the premises upon which it is proposed to erect the sign or other advertising structure.   Applicant must provide additional information on any sign at the request of the Zoning Administrator to show wind loads, calculations, etc.

**40-7-4      WHEN PERMIT BECOMES NULL AND VOID.**   If the work authorized under a Temporary Certificate of Zoning Compliance as required by **Section 40-9-4** has not been completed within **six (6) months** after the date of issuance, the permit shall become null and void.

*Carlinville City Code*                                           **Zoning Code 40-7-5**

**40-7-5    PAINTING REQUIREMENTS GENERALLY.** The owner of any sign as defined and regulated by this Code shall be required to have the sign properly painted, at least once every **two (2) years,** including all parts and supports of the sign, unless the parts and supports are galvanized or otherwise treated to prevent rust.

**40-7-6    PERMIT NUMBER, DATE OF ERECTION, AND VOLTAGE TO BE PAINTED ON SIGNS.** Every sign or other advertising structure, when erected, shall have painted in a conspicuous place thereon, in letters not less than **one (1) inch** in height, the date of erection, the permit number, and the voltage of any electrical apparatus used in connection therewith.

**40-7-7    REMOVAL OF CERTAIN SIGNS.** Any sign which no longer advertises a bona fide business conducted, or a product sold, shall be taken down and removed by the owner, agent, or person having the beneficial use of the building or structure upon which the sign may be found, within **ten (10) days** after written notification from the City, and upon failure to comply with the notice within the time specified in the order, the City is hereby authorized to cause removal of the sign, and any expense incident thereto shall be paid by the owner of the building or structure to which the sign is attached.

**40-7-8    UNSAFE AND UNLAWFUL SIGNS.** If the City shall find that any sign or other advertising structure regulated by this Code is unsafe or insecure, or is a menace to the public, or has been constructed or erected or is being maintained in violation of the provisions of this Code, he shall give written notice to the permittee thereof. If the permittee fails to remove or alter the structure so as to comply with the standards set forth in this Code within **ten (10) days** after the notice, the sign or other advertising structure may be removed or altered to comply with this Code by the City at the expense of the permittee or owner of the property upon which it is located. The City shall refuse to issue a permit to any permittee or owner who refuses to pay costs so assessed. The City may cause any sign or other advertising structure which is an immediate peril to persons or property to be removed summarily and without notice.

**40-7-9    NOT TO OBSTRUCT FIRE ESCAPES.** No outdoor advertising sign shall be erected, constructed, or maintained so as to obstruct any fire escape, or any window or door or opening used as a means of egress or for fire-fighting purposes, or so as to prevent free passage from one part of a roof to another part thereof. No sign shall be attached in any form, shape, or manner to a fire escape nor be so placed as to interfere with an opening required for legal ventilation.

**40-7-10     TO BE MARKED WITH ERECTOR'S NAME.**   Every outdoor advertising sign erected under the provisions of this Code shall be plainly marked with the name of the person erecting the sign.

**40-7-11     LOADS AND ALLOWABLE STRESSES.**

(A)          Ground signs shall be designed and constructed to withstand wind pressure of not less than **twenty-five (25) pounds** per square foot of exposed area, but all other signs must be designed and constructed to withstand wind pressure of not less than **fifty (50) pounds** per square foot of exposed area.

(B)          Allowable stresses and materials shall conform to the latest approved specifications of the American Standard Building Code Requirements for Structural Steel, approved by the American Standards Association, and the National Design Specification for Stress Grade Lumber and its Fastenings, recommended by the National Lumber Manufacturers Association.  The working stress of chains, wire ropes, and steel guy rods and their fastenings shall not exceed **one-fourth (1/4)** of their ultimate strength.

**40-7-12     GROUND SIGNS.**

(A)          No ground sign for which a permit is required shall be erected to a height of more than **twelve (12)** feet above the ground unless the face is constructed of sheet metal or other noncombustible facing materials.

(B)          The bottom of the facing of every ground sign shall be at least **thirty (30) inches** above the ground, which space may be filled with platform or decorative trim of light wood or metal construction.

(C)          Ground signs shall be adequately supported to resist dead load and the wind load specified in **Section 40-7-11** acting in any direction on the sign.

(D)          Ground signs which do not exceed **twenty-five (25) feet** in height may have supports which consist only of vertical posts driven into or set in the soil, or which consist only of vertical posts rigidly attached to bases embedded in the soil.  There shall be **two (2)** or more vertical posts spaced not to exceed a distance equal to **one-half (1/2)** the height of the sign above the ground, except that a sign which does not exceed **fifty (50) square feet** in any area may be supported by a single post.

(E)          The posts, or bases for rigidly attached posts, supporting unbraced ground signs shall be so proportioned that the bearing loads imposed upon the soil in either a horizontal or vertical direction shall not exceed safe values.  Braced ground signs shall be anchored to resist the specified wind load acting in any direction.  Anchors and support shall be designed for safe bearing loads on the soil and for an effective resistance to pull out amounting to a force **twenty-five percent (25%)** greater than the required resistance to overturning.

(F)          The soil used for backfill for the dug-in type of anchor or post support shall be carefully placed and thoroughly compacted.  The anchors and supports shall penetrate to a depth below ground greater than that of the frost line.

# Carlinville City Code

(G)      Portable signs supported by frames or posts rigidly attached to bases shall be so proportioned that the weight and size of the base is adequate to resist the wind pressure specified in **Section 40-7-11**. The sign shall not exceed **six (6) feet** in height.

(H)      Whenever anchors or supports consist of wood embedded in the soil, the wood shall be treated under pressure with creosote or other approved preservation before erection. This requirement shall not apply to temporary signs which will not remain in place for more than **six (6) months**.

(I)      The owner of a lot upon which there is a ground sign or the person occupying the lot or both are hereby required to keep the lot and the ground sign clean, sanitary, inoffensive and free and clear of all obnoxious substances and unsightly conditions.

### 40-7-13   ROOF SIGNS.

(A)      Every roof sign shall be constructed entirely of fire-resistive materials, including the uprights, supports, and braces, except that the ornamental molding, battens, cappings, and nailing strips, platforms, and the decorative trimmings may be constructed of combustible materials.

(B)      No roof sign shall project beyond the exterior wall, but if illuminated, lighting reflectors may project beyond the face of the wall.

(C)      Roof signs shall be so constructed as to leave a clear space, except for the structure supporting the sign, of not less than **four (4) feet** between the roof and the lowest part of the sign.

(D)      Roof signs shall be thoroughly secured and anchored to the building over which they are constructed and erected. The dead and wind loads from the signs shall be distributed to the structural elements of the building in a manner that no element shall be over stressed.

(E)      Uplift due to overturning of roof signs shall be adequately resisted by proper anchorage to the building walls or structure, or by sufficient concrete counterweights to resist uplift. Proper anchorage to the building walls or structure shall include alterations to the building as may be needed to integrate and adequately interconnect sufficient dead load to equal not less than **ten percent (10%)** in excess of the computed uplift applied to the building by the sign. Where uplift is resisted by counterweights, their weight shall exceed the amount of the uplift by **ten percent (10%)**.

### 40-7-14   WALL SIGNS.   Wall signs attached to exterior walls of solid masonry or concrete shall be safely and securely attached to the walls by means of metal anchors, bolts, or expansion screws of not less than **three-eighths (3/8) inch** in diameter which shall be embedded at least **five (5) inches**. No wooden blocks or anchorage with wood used in connection with screws or nails shall be considered proper

anchorage, except in the case of wall signs attached to buildings with walls of wood. No wall sign shall be entirely supported by an unbraced parapet wall. Painted advertising shall be considered a wall sign and shall require a permit.

### 40-7-15    PROJECTING SIGNS.

(A)      Signs shall in no case project from a building or structure to any point within **two (2) feet** of a line drawn perpendicularly upward from the curb line. No projecting sign shall at the lowest point be less than **nine (9) feet** above the sidewalk or the ground level. All projecting signs for which a permit is required shall be constructed entirely of fire-resistive materials approved by the City for this purpose.

(B)      Projecting signs shall be securely attached to a building or structure by metal bolts, anchors, supports, chains, wire ropes, or steel rods. No staples or nails shall be used to secure any projecting sign to any building or structure.

(C)      The dead load of projecting signs, not parallel to the building or structure, and the load due to wind pressure shall be supported by structural shapes, chains, wire ropes, or steel guy rods. These supports shall be erected and maintained preferably at an angle of **forty-five (45) degrees** or more with the face of the sign in an approximately horizontal plane to resist wind pressure. The lateral supports shall be spaced not more than **eight (8) feet** apart and shall be secured to a bolt or expansion screw capable of developing the strength of the supporting chain, wire, rope or steel guy rod. The expansive device and details of the anchorage shall be subject to the approval of the City. Turn buckles or other approved means of adjustment shall be placed in all chains, wire ropes, or steel guy rods supporting or bracing projecting signs.

(D)      Chains, wire ropes, or steel guy rods used to support the dead or wind load of projecting signs may be fastened to solid masonry walls with expansion bolts or other devices approved by the City, but no support shall be attached to an unbraced parapet wall. Where the supports must be fastened to walls made of wood, the supporting device must be fastened securely in a manner approved by the City.

(E)      All metal supports and braces for projecting signs shall be galvanized or of corrosive-resistant material or painted at least once annually.

### 40-7-16    MARQUEE SIGNS.

Fire-resistant marquee signs may be attached to or hung from a marquee. When attached to or hung from a marquee, the sign shall be at least **nine (9) feet** at its lowest level above the sidewalk or ground level. No sign shall extend outside the vertical lines of the marquee. All marquee signs shall have a 14 watt per bulb limit.

### 40-7-17    ALLOWABLE SIZES AND LOCATIONS.

Signs requiring a permit per **Section 40-7-1** shall only be erected in the following approved Districts and be subject to the following size restrictions.

*Carlinville City Code*

    (A)        Maximum **twelve (12) square feet** per side in the Single Family Residential Districts, S-1 and S-2.

    (B)        Maximum **thirty-two (32) square feet** per side in the Neighborhood Commercial District, C-1.

    (C)        Maximum **one hundred (100) square feet** per side in the General Commercial and Industrial Districts, C-2 and I.

**EASEMENT**

The Grantor, CARLINVILLE SOUTHERN BAPTIST CHURCH, an Illinois religious corporation, located in Carlinville, Macoupin County, Illinois, for good and valuable consideration, hereby CONVEYS and WARRANTS to the CITY OF CARLINVILLE, ILLINOIS, an Illinois municipal corporation, a perpetual easement for the construction, installation, repairing, replacing and maintaining of a public roadway to be used by the public upon the following described real estate, and also a perpetual easement for the construction, installation, repairing, replacing and maintaining of utility lines and any appurtenances thereto, upon the following described real estate:

Part of Lots 9 and 10 in Welton's and Others Subdivision of part of the West Half of the Northeast Quarter of Section 29, and parts of Lots 3 and 4 in Welton's and Others Subdivision of part of the West Half of the Southeast Quarter of Section 29, all in Township 10 North, Range 7 West of the Third Principal Meridian, Macoupin County, Illinois, described more particularly as follows:

Starting at the Southeast corner of said Lot 3; thence with the East line thereof, North 161.00 feet; thence leaving said East line South 89 degrees 27 minutes West 279.63 feet; thence South 161.00 feet to the South line of said Lot 3; thence with said South line and the South line of said Lot 4 South 89 degrees 27 minutes West 130.37 feet to the point of beginning; thence leaving South line of said Lot 4 North 548.50 feet; thence North 89 degrees 27 minutes East 50.00 feet; thence South 548.50 feet, more or less, to the South line of the aforesaid Lot 4; thence West 50 feet, more or less, along the South line of the aforesaid Lot 4 to the place of beginning.

Parcel ID Number:  12-000-400-00

Exhibit No. 7

situated in the County of Macoupin and State of Illinois.

IN WITNESS WHEREOF, said Grantor has caused its corporate seal to be hereto affixed and said Grantor has caused its name to be signed to these presents by its President, and attested by its Secretary, this __12__ day of __December__, 2008.

CARLINVILLE SOUTHERN BAPTIST CHURCH,

BY: _Tim Rhodus_
Its President

ATTEST: _Elaine Lee_
Secretary

COUNTY OF MACOUPIN )
                      ) SS
STATE OF ILLINOIS )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _Tim Rhodus_, personally known to me to be the President of Carlinville Southern Baptist Church, and _Elaine Lee_, personally known to me to be the Secretary of said corporation, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as such President and Secretary, they signed and delivered the said instrument as President and Secretary of said corporation, pursuant to authority given by the Board of Trustees of said corporation, as their free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and Notarial seal this __1d__ day of __December__, 2008.

_Lesa A. Sanson_
Notary Public

"OFFICIAL SEAL"
LESA A SANSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/08/2011

2

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL DISTRICT

MACOUPIN COUNTY, ILLINOIS

CITY OF CARLINVILLE, ILLINOIS,       )
                                     )
     Plaintiff,                     )
                                     )
v.                                   )       CASE NO. 08CH63
                                     )
CARLINVILLE SOUTHERN BAPTIST         )
CHURCH,                              )
                                     )
     Defendant.                     )
                                     )

## STIPULATED ORDER FOR DISMISSAL
## WITH PREJUDICE AND WITHOUT COSTS

At a session of said Court, held in the
County of Macoupin, State of Illinois
On _____.

PRESENT: _____
                CIRCUIT COURT JUDGE

WHEREAS, the Plaintiff, City of Carlinville, Illinois and Defendant, Carlinville Southern

Baptist Church, have reached a settlement of this matter;

AND WHEREAS the Plaintiff and Defendant, through their respective counsel, stipulate to

the entry of the following order and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice and

without costs to either party.

**IT IS SO ORDERED.**

HON. _____
CIRCUIT COURT JUDGE

STIPULATED AS TO FORM:

_____       _____
By: Elisha S. Rosenblum                By: Daniel P. Dalton
Attorney for Plaintiff                 Attorney for Defendant

Exhibit No. 8

DECEMBER _____, 2008

Macoupin County
Attn: Anne Boehm
Treasurer/Ex-Officio Collector
201 East Main
Carlinville, IL 62626

    Re:   Carlinville Southern Baptist Church
           1030 West Main Street, Carlinville, Illinois

Dear Ms. Boehm:

Please allow this letter to serve as the City of Carlinville's withdrawal of its objection and protest of exemption with respect to the property tax exemption of the property owned by Carlinville Southern Baptist Church at 1030 West Main Street, Carlinville Illinois.

                      City of Carlinville

           By: _____
               Mayor Robert Schwab

Exhibit no. 9